567 A.2d 1116

**Earl ACKERMAN and Margaret D. Ackerman, his wife, Appellants,**

v.

**UPPER MT. BETHEL TOWNSHIP and Bethel Heights Associates, Inc., Appellees.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 1989.

Decided Dec. 21, 1989.

Ronald W. Shipman, Shipman & Grifo, Easton, for appellants.

Richard J. Haber, Haber & Corriere, Bethlehem, for appellee, Upper Mt. Bethel Tp.

John Molnar, Cassebaum, McFall & Molnar, P.C., Bangor, for intervenor, Bethel Heights Associates, Inc.

Before CRAIG and BARRY, JJ., and BARBIERI, Senior Judge.

CRAIG, Judge.

Earl and Margaret Ackerman appeal an order of President Judge Williams of the Court of Common Pleas of Northampton County that dismissed their appeal challenging the Upper Mount Bethel Township Board of Supervisors' adoption of a zoning amendment as violating section 4[1] of the Sunshine Act.

The facts are not in dispute. On October 13, 1987, Bethel Heights Associates, Inc. (BHA)[2] petitioned the board to amend the township's zoning ordinance classification for a tract of land BHA had planned to develop. On November 9, 1987 and November 16, 1987, the board published notices of

1. Act of July 3, 1986, P.L. 388, 65 P.S. § 274.
2. BHA is intervenor-appellee in this matter.

a public hearing on the proposed amendment to be held November 30, 1987 at 7:30 p.m.

Supervisor Allen Haddad had become an appointed member of the board on September 16, 1987. Because of his recent appointment, Haddad had questions regarding the proposed amendment and BHA's planned development.

On the morning of November 30, 1987, Haddad told Supervisor Ronald Angle that he felt unprepared for the evening's public meeting and vote on the proposed amendment. Angle suggested that they meet with Roy Olsen of BHA that afternoon in conference to "bounce the issues off" Olsen. Supervisor Earnest Gearhart, the township's third supervisor, received notice of the conference but chose not to attend, citing concern as to its legitimacy under the Act.

At 4:00 p.m. that afternoon, Haddad, Angle, and Olsen assembled at the township building. The conference lasted approximately 30 minutes. During the conference, Haddad questioned Olsen about the proposed amendment and BHA's planned development under the proposed amendment. Because of other business in the office, Angle sat in on the conference for approximately 10 minutes, asking only a few questions.

At 7:30 p.m. that evening, the board held a public hearing on the proposed amendment. During the public hearing, Haddad acknowledged that the group had assembled earlier in the day to clarify Haddad's questions regarding the proposed amendment and BHA's planned development. After extensive public debate, the board unanimously adopted the proposed amendment.

On December 30, 1987, the Ackermans appealed the adoption of the zoning amendment to the trial court.

President Judge Williams decided that a violation of section 4 did occur. However, he refused to set aside the amendment and dismissed the appeal, citing the trial court's discretion under section 13 [3] of the Act.

3. 65 P.S. § 283.

On appeal, the Ackermans contend that (1) the afternoon conference between Haddad, Angle, and Olsen violated the Act's open meeting requirement under section 4, and (2) because of the group's violation of section 4, the vote on the zoning amendment at the board's evening public meeting must be invalidated under section 13 of the Act.

Where the trial court takes additional evidence and decides a case de novo, this court's scope of review is limited to whether the trial court committed an abuse of discretion or error of law. *Claremont Properties, Inc. v. Board of Supervisors, Middlesex Township,* 118 Pa.Commonwealth Ct. 527, 546 A.2d 712 (1988).

### 1. Sunshine Act Violation

The Ackermans first contend that the afternoon conference between Haddad, Angle, and Olsen violated section 4 of the Act.[4]

Because of the limited case law interpreting the Sunshine Act, we must examine the Act's purpose, set forth in section 2.[5]

**Legislative findings and declarations**

(a) **Findings**—The General Assembly finds that the right of the public to be present at all meetings of agencies and to witness the deliberation, policy formulation and decisionmaking of agencies is vital to the enhancement and proper functioning of the democratic process and that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in the democratic society.

(b) **Declarations**—The General Assembly hereby declares it to be the public policy of this Commonwealth to insure the right of its citizens to have notice of and the right to attend all meetings of agencies at which any

4. The township, as appellee, does not contest the trial court's determination that the afternoon conference violated section 4 of the Act. However, BHA challenges the trial court's determination on this issue.

5. 65 P.S. § 272.

agency business is discussed or acted upon as provided in this act.

In interpreting the Act's application in this case, the relevant definitions under section 3 [6] are as follows:

**"Agency."** The body, and all committees thereof authorized by the body to take official action or render advice on matters of agency business, of all of the following: ... any board, council, authority or commission of the Commonwealth or of any political subdivision of the Commonwealth ...

**"Agency business."** The framing, preparation, making or enactment of laws, policy or regulations, the creation of liability by contract or otherwise or the adjudication of rights, duties and responsibilities, but not including administrative action.

**"Deliberation."** The discussion of agency business held for the purpose of making a decision.

**"Meeting."** Any prearranged gathering of an agency which is attended or participated in by a quorum of the members of an agency held for the purposes of deliberating agency business or taking official action.

**"Official action."**

(1) Recommendations made by an agency pursuant to statute, ordinance or executive order.

(2) The establishment of policy by an agency.

(3) The decisions on agency business made by an agency.

(4) The vote taken by an agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order.

As noted above, the trial court concluded that the afternoon conference between Haddad, Angle, and Olsen violated section 4 of the Act.

Section 4, in its entirety, states as follows:

**Open Meetings**

6. 65 P.S. § 273.

Official action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public unless closed under section 7, 8, or 12.

BHA contends that no "official action" or "deliberations" by a quorum of the members of an "agency" occurred at a "meeting."

### a. "Official Action" or "Deliberations"

■ First, we must determine whether the group conducted any "official action" or "deliberations" during the afternoon conference.

In examining the group's acts during the conference, we agree with the trial court that no "official action" took place. The conference produced no votes or decisions on the proposed amendment, nor did any recommendations or establishment of policy emerge at the conference.

Although "official action" conceivably could take place in a private meeting which violates the Act if a quorum of agency members reach a consensus or decision on an action, policy or recommendation, the Ackermans presented no evidence that Haddad and Angle made any decision as to the proposed amendment at the afternoon conference.

However, the group's acts during the conference clearly amounted to "deliberations" on the proposed ordinance.

The conference between Haddad, Angle, and Olsen centered on the proposed amendment and BHA's planned development. The zoning amendment, as a pending law, constituted "agency business" under the Act.

Because there was discussion of the agency business at the conference, obviously toward the purpose of ultimately making a decision at some time, we conclude that "deliberations," as defined under section 3 of the Act, occurred between the group members at the afternoon conference.

### b. "Meeting"

■ Next, we must examine whether the group's conference constituted a "meeting." No one disputes that the

group's conference was a "... prearranged gathering ..." within the Act's definition of "meeting."

We are mindful that the sole reason for the group's conference stemmed from Haddad's recent appointment to the board and Haddad's doubt as to his preparedness for the evening's public hearing and vote on the proposed amendment. This court's 1985 statement regarding a supervisor's duty to be informed is still good law.

> Supervisors are not restricted to information furnished at a public meeting. A supervisor has the right to study, investigate, discuss and argue problems and issues prior to the public meeting at which he may vote. Nor is a supervisor restricted to communicating with the people he represents.... He can talk with interested parties as does a legislator ... Nor is a supervisor prohibited from listening to and talking with the applicant for a zoning change ... If a supervisor recognizes a problem he is free to relate it and discuss it with all interested parties.

*Belle Vernon Area Concerned Citizens Appeal,* 87 Pa. Commonwealth Ct. 474, 481, 487 A.2d 490, 494 (1985) [citing *Palm v. Center Township,* 52 Pa.Commonwealth Ct. 192, 195–96, 415 A.2d 990, 992 (1980)].

In *Pennsylvania Legislative Correspondents' Association v. Senate of Pennsylvania,* 113 Pa.Commonwealth Ct. 367, 537 A.2d 96 (1988), *aff'd,* 520 Pa. 82, 551 A.2d 211 (1988), this court concluded that discussions on a bill at gatherings of unnamed legislators before the designation of a conference committee on the bill were not "meetings" under the Act. The court in *Pennsylvania Legislative Correspondents' Association* relied on the fact that no "agency" existed at the time of the gatherings, and thus, no "agency business" could be conducted.

In the present case, the group, consisting of two of the three "agency" members, assembled for the purpose of discussing the proposed zoning amendment, which constitutes "agency business" under section 3 of the Act. Hence, this court's rationale in *Pennsylvania Legislative Correspondents' Association* could support the conclusion that a

"meeting" occurred if the group amounted to a quorum of the "agency."

Therefore, the pivotal issue is whether there was a quorum of "agency" members present at the afternoon conference.

BHA contends that because Angle attended only 10 minutes of the conference and did not extensively participate in the questioning, no section 4 violation occurred because no quorum of "agency" members presided over the meeting.

However, because Angle chose to attend, he subjected the afternoon conference to the Act's scrutiny in that his presence at the afternoon conference provided a quorum of board members in attendance. Regardless of Angle's length of stay at the conference or his participation in the questioning, a quorum of board members attended the conference. Thus, the afternoon conference was a "meeting" as defined under section 3 of the Act.

We conclude that because "deliberations" by a quorum of "agency" members occurred at a prearranged gathering, the group's afternoon conference was equivalent to a "meeting" under the Act. Finally, because the "meeting" was closed to the public, the "meeting" violated section 4 of the Act.

## 2. Statutory Sanction

■ The Ackermans next contend that because the group's afternoon meeting violated section 4, the supervisor's vote at the evening public hearing must be invalidated under section 13 of the Act. Section 13 of the Act outlines the consequences of such a violation of the Act.

**Business transacted at unauthorized meeting void**

Should the court determine that the meeting did not meet the requirements of this act, it may *in its discretion* find that *any or all official action taken at the meeting* shall be invalid. (Emphasis supplied.)

The trial court exercised its discretion under section 13 and refused to set aside the zoning amendment, stating that:

> The Court has reviewed the transcript of the public hearing which had been properly advertised and was well attended. In addition to Olsen and BHA's engineer, numerous citizens questioned both the supervisors and the proponents concerning the zoning amendment and related matters. There was extensive discussion of the issues, including those raised by Haddad at the earlier meeting, as well as advantages and disadvantages of the proposal to the Township. At its conclusion the ordinance was adopted by a 3-0 vote of the Supervisors. This action "was not a plan adopted in secret and then foisted on an unsuspecting public," (citation omitted) nor is there any evidence that it was a mere rubber stamp approval. Under the circumstances in this case, we will not set aside the adoption of the ordinance and require the costly process of enactment to begin anew.

Upon review of the record, we conclude that the trial court did not abuse its discretion under section 13.

■ Furthermore, under section 13, the legislature granted discretion to the court to invalidate "... any or all *official action taken at the* [closed] *meeting* ..." Certainly, if action taken at an unlawful private meeting is the *only* action ever taken on the subject, it could be invalidated. However, section 13 does not expressly permit courts to invalidate "official action" taken at a public meeting occurring *after* a private meeting held in violation of section 4.

Although the Sunshine Act's purpose is to discourage private meetings on agency business followed by rubber-stamp public hearings, the legislature has apparently pro-

vided no remedy to achieve this purpose beyond summary criminal proceedings against agency members.[7]

This court is not prepared to decide—because this case does not require it—that, if a decision is reached at an unlawful private meeting, the body is disabled from reiterating the same decision at a subsequent public meeting. In drafting the Act, the legislature failed to define whether a private meeting which violates the Act taints a later open meeting and decision on the same agency business, or whether the later open meeting may have some curative effect upon the earlier violation. Taking into consideration the purpose of the Act, legislative clarification on this particular point would be desirable.

Accordingly, we affirm President Judge Williams' order in this matter.

## ORDER

NOW, December 21, 1989, the order of the Court of Common Pleas of Northampton County, No. 1987–C–9335, dated January 23, 1989, is affirmed.

---

7. Section 14 of the Act, 65 P.S. § 284, provides as follows:

**Penalty**

Any member of an agency who participates in a meeting with the intent and purpose by that member of violating this act commits a summary offense and shall, upon conviction, be sentenced to pay a fine not exceeding $100 plus costs of prosecution.