625 A.2d 737

Anna May MOORE, Robert E. Jones
and Sharon Jones, Appellants,

v.

TOWNSHIP OF RACCOON, Board of Supervisors, Township of
Raccoon Planning Commission, Gary Andresky, Charles Mag-
ley, John Moore, Mary Anne Stickles, John Shivler, Joanne
Black, Mary Caughey, Donna Windisch, Patrick Duafala, Bev-
erly Surma, and Karl Nejek.

Commonwealth Court of Pennsylvania.

Argued March 2, 1993.

Decided May 13, 1993.

Nicholas H. Krayer, for appellants.

Frank S. Kelker, for appellees.

Before CRAIG, President Judge, and McGINLEY, J., and LORD, Senior Judge.

CRAIG, President Judge.

Anna May Moore, Robert E. Jones and Sharon Jones (objectors), residents of Raccoon Township, appeal an order of the Court of Common Pleas of Beaver County which dismissed their motion to remove a compulsory nonsuit which the trial court had entered in their complaint seeking declaratory and injunctive relief based on a claim under the Sunshine Act, Act of July 3, 1986, P.L. 388, §§ 1–16, 65 P.S. §§ 271–286.

The facts, as stated in the trial court's opinion in support of its dismissal of the objectors' motion to remove the compulso-

ry nonsuit, are as follows. The township's board of supervisors asked the township's planning commission to review the township's junkyard ordinance. The commission held public meetings, during which participants discussed proposed changes to the ordinance. Thereafter, the chairperson of the commission arranged for the members of the commission to meet at her home on February 19, 1991; the commission did not advertise the meeting, and it was not open to the public. Only one of the seven members of the commission did not attend the meeting. The purpose of the meeting was for the commission to review recommended changes to the ordinance. At the next public and advertised meeting of the commission, on February 24, 1992, the commission favorably recommended a proposed junkyard ordinance for the consideration of the board of supervisors.

The objectors challenged the commission's action by their complaint seeking a declaration that the commission's recommendation regarding the ordinance is void and asking for an order enjoining the commission from recommending to the board of supervisors revisions to the ordinance that were discussed at the allegedly improper meeting at the home of the commission's chairperson.

The trial judge denied the objectors the relief they requested based on his conclusion that (1) there was no violation of the Sunshine Act, because "the Junkyard Ordinance was not agency business," under section 3 of the Act, 65 P.S. § 273 and (2) even if the meeting did violate the Sunshine Act, the commissioners' later public meeting removed the taint of the closed meeting.

The objectors raise the following issues in this appeal: (1) whether the trial court erred in concluding that the planning commission has no subject matter jurisdiction to make recommendations to the governing body regarding a junkyard ordinance, as a basis for the trial court to hold that the closed meeting therefore could not constitute a violation of section 4 of the Act, 65 P.S. § 274, which requires that "[o]fficial action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public....";  (2)

whether the trial court erred in concluding that the open meeting the commissioners held following the closed meeting cured any violation; and (3) whether the trial court abused its discretion by determining that, even if a violation did occur, the relief the objectors seek is not required under section 13 of the Act.

### 1. *Violation of the Sunshine Act*

The pivotal issue in this case is whether junkyard regulation matters come within the subject matter jurisdiction of planning commissions. If the planning commission has subject matter jurisdiction over such regulations, meetings the planning commission conducts regarding the regulation may be subject to section 4 of the Act, which requires that agencies carry out official action and conduct deliberations at public meetings.

Under section 209.1(a)(1) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, 53 P.S. § 10209.1(a)(1), planning commissions, at the request of the governing body

have the power and shall be required to:

(1) Prepare the comprehensive plan for the development of the municipality as set forth in this act, and present it for consideration of the governing body.

Article III of the MPC, section 301(2) describes the basic elements that a comprehensive plan should include:

*A plan for land use, which may include provisions for* the amount, intensity, character and timing of *land use proposed for* residence, *industry, business,* agriculture, major traffic and transit facilities, utilities, community facilities, public grounds, parks and recreation, preservation of prime agricultural lands, flood plains and other areas of special hazards and other similar uses. (Emphasis added.)

Additionally, section 209.1(b) of the MPC provides planning commissions with the specific authority to perform the following functions, at the request of the governing body:

*(9) Make recommendations to governmental,* civic and private *agencies* and individuals *as to the effectiveness of the proposals of such agencies* and individuals.

. . . . .

(14) *Review* the zoning ordinance, subdivision and land development ordinance, official map, provisions for planned residential development, and such *other ordinances and regulations governing the development of land* no less frequently than it reviews the comprehensive plan. (Emphasis added.)

█ The above-quoted provisions indicate that the General Assembly contemplated that planning commissions would serve a significant role in developing comprehensive plans for municipalities. The broad description of comprehensive plans clearly encompasses implementing ordinances such as the junkyard regulation at issue here.

Furthermore, contrary to the trial court's conclusion that no provision of the MPC empowers planning commissions to make recommendations to the governing body regarding a junkyard ordinance, subsections (a), (b)(9) and (b)(14) of section 209.1, quoted above, vest planning commissions with the power to make recommendations on a broad range of municipal land use matters.

█ The General Assembly, in adopting section 209.1, intended that planning commissions play an active role in all aspects of municipal development and land use. Although the trial court was correct in noting that junkyard ordinances are not zoning ordinances, *Mt. Joy Township v. Davies Used Auto Parts,* 80 Pa.Commonwealth Ct. 633, 472 A.2d 1172 (1984), nevertheless subsections (a), (b)(9) and (b)(14) empower the governing body to seek a recommendation by a planning commission on any ordinance, such as a junkyard ordinance, which regulates or otherwise affects the use of land within the municipality. Hence, our conclusion is that the planning commission does have subject matter jurisdiction to make recommendations to governing bodies regarding the regulation of junkyards, and we must determine whether the com-

mission violated the provision of the Sunshine Act mandating public meetings.

Section 4 of the Act, 65 P.S. § 274 requires that

[o]fficial action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public. . . .

The Act defines the relevant terms in this case as follows:

**"Agency business."** The framing, preparation, making or enactment of laws, policy or regulations, the creation of liability by contract or otherwise or the adjudication of rights, duties and responsibilities, but not including administrative action.

**"Deliberation."** The discussion of agency business held for the purpose of making a decision.

**"Official action."**

(1) Recommendations made by an agency pursuant to statute, ordinance or executive order.

(2) The establishment of policy by an agency.

(3) The decisions on agency business made by an agency.

(4) The vote taken by any agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order.

As noted above, under section 4, an agency commits a violation of the open meeting requirement if it conducts either agency business or deliberations in private meetings.

Under the Act's above-quoted definition of the term "official action," the duties required of planning commissions under MPC §§ 10209.1(b)(9) and (14), include "recommendations made by an agency pursuant to statute."

The planning commission's submission of a recommendation pursuant to the request of the board of supervisors constitutes "official action" under the Act. The commission's method of arriving at a proposal to submit to the governing body is "agency business" because the acts involved in making a proposal relate to the "framing" or "preparation" of laws or policy. The discussion by the majority of the commission's members at the closed meeting of the ordinance constituted a

"deliberation." As such, the commission was required to conduct the meeting in the open, in accordance with section 4 of the Act.

Thus, contrary to the trial court's conclusion that the commission's meeting did not violate the Act, because the commission was not empowered under the MPC to advise the governing body regarding the junkyard ordinance, the commission did violate the Act by conducting deliberations on agency business at a closed meeting.

### 2. Curing of the Violation and Obviation of Invalidation Sanction

The objectors argue that the trial court erred in concluding that, even if a violation of the Act occurred, nevertheless the meeting the commission held after the closed meeting, at which the commission approved a recommendation for the board, cured any taint caused by the invalid meeting. The objectors assert that the trial court should have granted the injunctive relief they seek and voided the action the commission took in adopting a recommendation at the later lawful meeting. The planning commission argues that the trial court had the discretion to decide whether or not to invalidate any action the commission or governing body took after the unlawful meeting, because the taint of the invalid meeting was removed by the open meeting the commission held after its invalid, closed meeting.

Section 13 of the Act and this court's decision in *Ackerman v. Upper Mount Bethel Township*, 130 Pa.Commonwealth Ct. 254, 567 A.2d 1116 (1989), are dispositive with regard to the remaining issues concerning whether the commission's valid open meeting cured its violation of the Act and whether the trial court should have invalidated the commission's adoption of its recommendation to the board.

In *Ackerman*, the Ackermans challenged the adoption of a zoning amendment by the municipality's governing body. The members of the board at the unlawful meeting later participated in an open meeting at which the full board adopted the

amendments to the ordinance. This court concluded that the earlier meeting violated the Sunshine Act. However, we did not reverse the trial court's decision declining to set aside the amendment. This court noted the language of section 13, which provides in pertinent part:

**Business transacted at unauthorized meeting void**

The court may enjoin any challenged action until a judicial determination of the legality of the meeting at which the action was adopted is reached. *Should the court determine that the meeting did not meet the requirements of this act, it may in its discretion find that any or all official action taken at the meeting shall be invalid.* Should the court determine that the meeting met the requirements of this act, all official action taken at the meeting shall be fully effective. (Emphasis added.)

This court concluded that section 13 of the Act did not specifically provide courts with the authority to nullify actions taken at valid open meetings that occur after an unlawful meeting:

[S]ection 13 does not expressly permit courts to invalidate "official action" taken at a public meeting occurring *after* a private meeting held in violation of section 4.

Although the Sunshine Act's purpose is to discourage private meetings on agency business followed by rubber-stamp public hearings, the legislature has apparently provided no remedy to achieve this purpose beyond summary criminal proceedings against agency members.

. . . . .

In drafting the Act, the legislature failed to define whether a private meeting which violates the Act taints a later open meeting and decision on the same agency business, or whether the later open meeting may have some curative effect upon the earlier violation.

130 Pa.Commonwealth Ct. at 262-3, 567 A.2d at 1120-1. (Emphasis in original, footnote omitted.)

Although this case may be factually different from the *Ackerman* case, in that there is clear evidence in this case that

the commission changed its position during the course of the unlawful meeting, *Ackerman* nevertheless controls, because the commission held an open meeting after the closed meeting, at which time citizens could voice their opinion regarding the junkyard ordinance. In accordance with the legislative grant of discretion to the trial court to determine whether relief is warranted, and this court's decision in *Ackerman*, this court concludes that the trial court did not abuse its discretion by stating in the alternative that the objectors are not entitled to the injunctive or declaratory relief they seek. Accordingly, the trial court's decision is affirmed.

## ORDER

NOW, May 13, 1993, the order of the Court of Common Pleas of Beaver County, dated August 25, 1992, at No. 523 of 1992, is affirmed.

Due to the illness of Senior Judge WRIGHT, this case was submitted to Senior Judge LORD for consideration.