**LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA, and Citizen Action/Pennsylvania Chapter, and Consumers Education and Protective Association, Petitioners,**

v.

**COMMONWEALTH of Pennsylvania, and Thomas J. Ridge, Governor, and Catherine Baker Knoll, Treasurer, Respondents.**

Commonwealth Court of Pennsylvania.

Heard Sept. 9, 1996.

Decided Sept. 12, 1996.

Publication Ordered Oct. 1, 1996.

---

1. In fact, appellant merely asserts that its policy provisions are clear, unambiguous, and in accordance with public policy, and infers from the award for appellee that the arbitration panel must have found otherwise. *See* Appellant's Brief at 7. This unsupported inference falls short of establishing that the arbitration panel found a specific policy provision contrary to legislative mandate.

Eric B. Schnurer, for Petitioner, League of Women Voters.

Gregg R. Melinson, for Respondent, Governor Thomas Ridge.

John P. Krill, for Intervenors, Senators Loeper and Tilghman.

Christopher B. Craig, for Intervenor, Senator Fumo.

COLINS, President Judge.

## I. BACKGROUND

On July 19, 1995, Common Cause of Pennsylvania filed a petition for review in this Court's original jurisdiction attacking on constitutional grounds the enactment of the general appropriations bill for fiscal year 1995–96 as enacted by the General Assembly of Pennsylvania and signed into law by the Governor. Following the grant of a partial preliminary injunction on August 1, 1995, an *en banc* panel of this Court ultimately determined that the enactment of the General Appropriations Act of 1995–96(GAA) was in violation of numerous mandatory constitutional provisions. *Common Cause of Pennsylvania v. Commonwealth,* 668 A.2d 190 (Pa.Cmwlth.1995), *aff'd per curiam,* 544 Pa. 512, 677 A.2d 1206 (1996). While we denied the application of Common Cause for permanent injunctive relief as to the General Appropriations Act itself, we agreed with Common Cause that the legislature had violated mandatory constitutional provisions in enacting the 1995–96 GAA and granted a prospective declaratory judgment in favor of Common Cause.

On July 24, 1996, petitioners in the present action filed a petition for review in the nature of a complaint in equity in this Court's original jurisdiction. In the first three counts of a four-count petition for review, petitioners allege that the General Assembly, in its recent enactment of Act 1A of 1996, the General Appropriation Act (GAA) for Fiscal Year 1996–97, violated a mandatory constitutional provision when a Conference Committee purported to introduce changes to individual line item appropriations, which changes were beyond the scope of disagreement between the two chambers of the legislature. Petitioners assert that unless the Court grants relief in the instant case, our opinion in *Common Cause* will be "eviscerated" because the General Assembly, under the guise of a Conference Committee, will be able to accomplish

what this Court determined was constitutionally prohibited under *Common Cause*.

In addition to the alleged constitutional violations, Count Four of the petition for review alleges that the Conference Committee violated the Sunshine Act [1] when it compiled an extensive conference committee report containing numerous changes from one or both versions of the GAA adopted by the two chambers. Petitioners request this Court to declare that the 1996–97 GAA was unconstitutionally enacted or, in the alternative, that those portions of the GAA which were inserted by the Conference Committee be found to have been unconstitutionally enacted. Petitioners further seek to enjoin respondents from enforcing said provisions of the GAA.

Presently before the Court is petitioners' motion requesting that respondents be preliminarily enjoined from enforcing the GAA or those portions thereof alleged to be unconstitutional pending a decision by this Court on the merits.[2]

## II. FACTS [3]

1. On June 4, 1996, Senate Bill No. 1583, Printer's No. 2074 was introduced in the Pennsylvania Senate and referred to the Appropriations Committee.

2. Senate Bill No. 1583 was reported as committed by the Senate Appropriations Committee and was passed by the Senate on June 10, 1996 by a vote of 32–17.

3. Senate Bill No. 1583 was sent to the House of Representatives, where, following committee consideration and floor amendments, the bill was passed by a vote of 165–26 on June 13, 1996, bearing Printer's No. 2157.

4. On June 17, 1996, Senate Bill No. 1583, Printer's No. 2157 was referred to the Senate Committee on Rules and Executive Nominations.

5. On June 26, 1996, the Senate Committee on Rules and Executive Nominations voted to discharge Senate Bill 1583, Printer's No. 2157 to the full Senate with a recommendation that the Senate not concur in House amendments.

6. The Senate, on June 26, 1996, voted not to concur in the House amendments.

7. The House of Representatives, still on June 26, 1996, voted to insist upon its amendments.

8. On June 27, 1996, the Senate appointed Senators Loeper, Tilghman and Fumo and the House appointed Representatives Ryan, Pitts and Evans as members of a Committee of Conference on Senate Bill No. 1583.

9. The Conference Committee convened on June 27, 1996 and adopted a pre-prepared conference report by a vote of 5–1, with Representative Evans being the sole dissenter.

10. On June 27, 1996, the Conference Report on Senate Bill No. 1583, bearing Printer's No. 2212, was adopted by the full Senate by a vote of 36–13 and on June 28 by the House of Representatives by a vote of 113–88.

11. On June 29, 1996, Governor Ridge signed the bill into law.

## III. PRELIMINARY INJUNCTIVE RELIEF

### 1. GENERALLY

Equity will grant a preliminary injunction if the petitioner's right to relief is clear, the need for relief is immediate, and

---

1. Act of July 3, 1986, P.L. 388, *as amended*, 65 P.S. §§ 271–286.

2. A Petition for Leave to Intervene filed by Senators Loeper, Tilghman and Fumo, Senate members of the Conference Committee on Senate Bill 1583, was granted by this Court on September 9, 1996. Briefs in opposition to the application for preliminary injunction were filed by intervenors, and counsel for intervenors participated at the hearing on the preliminary injunction. Intervenors have also been granted leave to file preliminary objections to the underlying petition for review in this matter.

3. Although the parties were unable to stipulate to the facts relating to the enactment of Act 1A, the Court, for the limited purpose of determining whether petitioners have demonstrated a "clear right to relief" on their constitutional claims, takes judicial notice of the Legislative Journals, as well as the various versions of the Senate Bill that ultimately became Act 1A.

the injury will be irreparable if the injunction is not granted. *Zebra v. Pittsburgh Area School District,* 449 Pa. 432, 296 A.2d 748 (1972). Because the grant of a preliminary injunction is a harsh and extraordinary remedy, it is to be granted only when and if *each* criteria has been fully and completely established. *Committee of Seventy v. Albert,* 33 Pa.Cmwlth. 44, 381 A.2d 188 (1977). We shall first examine whether petitioners have demonstrated a clear right to relief.

## 2. THE CONSTITUTIONAL VIOLATIONS

■ In Counts One through Three of their petition for review, petitioners allege that the procedure by which the GAA was enacted violated various constitutional provisions. Specifically, petitioners argue that enactment of the GAA violated Article II, Section 1 and Article III, Sections 2, 4 and 5 of the Pennsylvania Constitution. These alleged constitutional violations all involve actions taken by the Conference Committee and are all premised on a finding that the actions of the Conference Committee violated Article III, Section 5.

As we stated in *Common Cause,*

[T]he GAA, as with all legislative enactments, is entitled to a strong presumption of constitutionality. 1 Pa.C.S. § 1922(3); *Snider v. Thornburgh,* 496 Pa. 159, 436 A.2d 593 (1981). The Courts have abstained from consideration of many perceived procedural irregularities under the enrolled bill doctrine, which, as explained in *Kilgore v. Magee,* 85 Pa. 401, 412 (1877), states that:

[W]hen a law has been passed and approved and certified in due form, it is not part of the duty of the judiciary to go behind the law as duly certified to inquire into the observance of its passage.... The presumption in favor of regularity is essential to the peace and order of the state.

668 A.2d at 195.

We further noted in *Common Cause,* however, that "it would be a serious dereliction on our part to deliberately ignore a *clear constitutional violation.*" *Id.* (quoting *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 178, 507 A.2d 323, 333 (1986)) (emphasis added).

Our Supreme Court has stated that judicial intervention is proper where "the facts are agreed upon and the question presented is whether or not a violation of a mandatory constitutional provision has occurred...." *Consumer Party of Pennsylvania,* 510 Pa. at 158, 180, 507 A.2d at 323, 334. We conclude that, for the limited purpose of considering whether petitioners have shown a clear right to relief on their request for preliminary injunction, no violation of a mandatory constitutional provision has occurred.

As noted earlier, an *en banc* panel of this Court concluded that the General Assembly had violated certain mandatory constitutional provisions in the enactment of the 1995–96 GAA in *Common Cause.* Contrary to the procedure employed in 1995, the facts reveal that the bill which ultimately became the 1996–97 GAA was properly introduced as a General Appropriations bill in the Senate. The bill was properly passed, without amendment, by the Senate and thereupon sent to the House of Representatives. In the House, the bill was debated at length and numerous amendments made, again all in a constitutionally correct manner. While the version ultimately passed by the House differed markedly from its Senate counterpart, there is no dispute that both versions were General Appropriations bills as that term is constitutionally defined. *See Common Cause,* 668 A.2d at 196–97.

The Senate, again pursuant to proper constitutional procedure, voted not to concur in the House amendments, thus triggering the appointment of the Conference Committee. That committee duly met and adopted a report, which was then adopted in both the House of Representatives and the Senate by the vote of a majority of the members elected thereto, in full compliance with Article III, Section 5 of the Pennsylvania Constitution. Petitioners' assertion that the Conference Committee's report is somehow limited to resolving only those areas in which the two versions differed is without support, either in the text of the constitution or cases interpreting it.

We first note that there is no allegation whatsoever that the GAA contained more than one subject or that its purpose was changed, as was the case in *Common Cause*. Nor can we find any language in the Constitution itself limiting those areas within a single subject, here, a General Appropriations bill, which may be addressed and changed by a conference committee.[4] Rather, the sole limitations are those imposed by internal legislative rules. For example, House of Representative Rule 48[5] provides in part that "[t]he conferees shall confine themselves to the differences which exist between the House and the Senate." Senate Rule XX[6] is even more explicit, providing the following:

> The deliberations of the [conference] committee shall be confined to the subject of difference between the two Houses, unless both Houses shall direct a free conference, and if their authority has been exceeded it shall be the duty of the presiding officer to call it to the attention of the Senate who shall then decide the question by a majority vote of those present.

Rather than a clear violation of a mandatory constitutional provision, petitioners have alleged an arguable violation of internal legislative rules. Judicial review of such a violation is precluded by the enrolled bill doctrine. Accordingly, we must deny petitioners' request for preliminary injunctive relief.

### THE SUNSHINE ACT VIOLATIONS

As to the alleged violations of the Sunshine Act, we initially note that these are statutory violations and not a "clear constitutional violation" of the type contemplated in *Consumer Party of Pennsylvania* and *Common Cause*. Accordingly, where a Sunshine Act violation is alleged after a bill has been passed and signed into law, the enrolled bill doctrine would prevent the courts from considering the alleged irregularity.

The Sunshine Act (Act) itself, however, provides a statutory remedy for violations of the Act, which are applicable to "all meetings of committees where bills are considered" pursuant to Section 12 of the Act, 65 P.S. § 282. Such an action, however, is solely statutory, and, as such, is limited by the statutory remedy. That remedy provides that the court "may enjoin any challenged action until a judicial determination of the legality of the meeting at which the action was adopted is reached." Section 13 of the Act, 65 P.S. § 283. Should the court determine that the meeting did not comply with the Sunshine Act, the court "may in its discretion find that any or all official action taken at the meeting shall be invalid." *Id.* Therefore, we must consider petitioners' request for preliminary injunction *not* under the general equity standards, but rather under the language of the Sunshine Act itself.

The "challenged action" at issue here is that the conferees compiled an extensive conference committee report *prior* to the conference committee's first public meeting. We do not believe that these actions violate the Sunshine Act.

The Sunshine Act applies only to "official action" or "deliberations" of an agency sub-

---

4. Former Chief Justice Nix, in considering an Article III, Section 1 challenge where a conference committee report was alleged to have changed the subject of a bill, stated that

> [t]he practice of sending legislation to a conference committee is by its nature designed to reach a consensus. It is therefore to be expected that the legislation that emerges from such a process may materially differ from the bills sent to the Committee for consideration. To unduly restrict this process would inhibit the democratic process in its traditional method of reaching accord and would unnecessarily encumber the heart of the legislative process.

*Consumer Party of Pennsylvania*, 510 Pa. at 181, 507 A.2d at 334 (citations omitted).

Petitioners correctly note that no Article III, Section 5 challenge was raised in *Consumer Par-*

*ty of Pennsylvania*, which was decided on single subject grounds. Nonetheless, we believe that Justice Nix's statement can be equally applied in the present context. We further note that Justice Hutchinson's concurring opinion in that case, in which Justice Papadakos joined, expressly recognized that "the freedom to compromise in conference is a *sine qua non* of the legislative process...." *Id.* at 188, 507 A.2d at 338 (Hutchinson, J., concurring).

5. Rules of the House of Representatives, as adopted January 1, 1995.

6. Rules of the Senate of Pennsylvania (operating rules for 1995–96 session).

ject to the Act. Section 3 of the Act, 65 P.S. § 273, defines "deliberation" as "[t]he discussion of agency business held for the purpose of making a decision." Petitioners allege that the preparation of an extensive report prior to the first public meeting of the conference committee must, of necessity, have involved closed-door "deliberations." Assuming, *arguendo*, that these actions constitute a violation of the Sunshine Act, this violation was cured by the subsequent open meeting of the committee at which the official action was taken. *Moore v. Township of Raccoon*, 155 Pa.Cmwlth. 529, 625 A.2d 737 (1993); *Ackerman v. Upper Mount Bethel Township*, 130 Pa.Cmwlth. 254, 567 A.2d 1116 (1989).

■■■ Furthermore, the mere preparation of a written report prior to the public meeting is not a *per se* violation of the Sunshine Act. *Piecknick v. South Strabane Township Zoning Hearing Board*, 147 Pa.Cmwlth. 308, 607 A.2d 829 (1992). We do not believe that the Sunshine Act was intended to cover the research and preparation of extensive reports. Rather, it is the action and discussion on the report which triggers application of the Sunshine Act.[7]

Even assuming a violation by the Conference Committee, it is manifestly unclear whether the subsequent adoption of the committee report by both the House of Representatives and the Senate constitutes "ratification," thus "curing" the violation. *See Lawrence County v. Brenner*, 135 Pa. Cmwlth. 619, 582 A.2d 79 (1990), *petition for allowance of appeal denied*, 527 Pa. 652, 593 A.2d 423 (1991).

Finally, we believe that language of the Sunshine Act granting this Court the discretionary authority to "enjoin any challenged action" should not be exercised under the facts of this case. As the Chancellor noted a year ago in denying a request to preliminarily enjoin the entire 1995–96 GAA,

[m]oneys appropriated in the general appropriation bill for the operation of the Commonwealth government are expended on a daily basis. A month has now passed since the effective date of [the GAA], and, if not enjoined by this Court, it will continue to pay for the day-to-day operations of the Commonwealth government until June 30, 1996. Included in these day-to-day expenses are payments to individuals and payment for necessary government functions. No immediate purpose would be served by enjoined these essential payments, but rather, such an order would produce chaos in state government with the immediate potential to harm the citizenry of the Commonwealth.

*Common Cause*, No. 320 M.D.1995, Chancellor's op. of August 1, 1995 at 13.

Accordingly, because it would be inappropriate to grant preliminary injunctive relief based on the alleged Sunshine Act violations and because we conclude that petitioners have failed to show a clear right to relief as to their constitutional claims, we must deny petitioners' request for preliminary injunctive relief.

### ORDER

AND NOW, this 12th day of September, 1996, following hearing on petitioner's application for preliminary injunction in the above-captioned matter, said application is DENIED.

7. In *Legislative Correspondents v. Senate*, 113 Pa. Cmwlth. 367, 537 A.2d 96 , *aff'd per curiam*, 520 Pa. 82, 551 A.2d 211 (1988), an *en banc* panel of this Court held that unofficial gatherings of unnamed legislators for whatever purpose do not constitute "meetings" subject to the provision of the Sunshine Act. At issue in *Legislative Correspondents'* was a Sunshine Act challenge to two bills enacted by adoption of Conference Committee reports. The pleadings alleged that one Conference Committee had held a three-minute meeting on a General Appropriations Act, while the second Conference Committee held a one-minute meeting on a bill increasing salaries for legislators, judges and certain executive officials.