789 A.2d 811 (2002)
ASSOCIATION OF COMMUNITY ORGANIZATIONS FOR REFORM NOW (ACORN), Action Alliance For Senior Citizens and Consumer Education and Protective Association (CEPA), and Hon. W. Wilson Goode, Jr., Hon. David C. Cohen and Hon. Angel L. Ortiz
v.
SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY (SEPTA).
Appeal of Association Of Community Organizations For Reform Now (Acorn), Action Alliance for Senior Citizens and Consumer Education and Protective Association (CEPA).
Commonwealth Court of Pennsylvania.
Argued November 6, 2001.
Decided January 4, 2002.
Irv Ackelsberg, Philadelphia, for appellants.
Mark Gottlieb, Philadelphia, for appellee.
Before PELLEGRINI, Judge, KELLEY, Judge, and NARICK, Senior Judge.
NARICK, Senior Judge.[1]
Association of Community Organizations for Reform Now, Action Alliance for Senior *812 Citizens, and Consumer Education and Protection Association (Appellants) appeal from an order of the Court of Common Pleas of Philadelphia County dismissing their appeal from the decision of Southeastern Pennsylvania Transit Authority (SEPTA) to increase public fares on its City Transit Division. We affirm.
SEPTA is a Commonwealth agency, created under the Metropolitan Transportation Authorities Act (Act)[2] to operate a mass-transit system within Philadelphia and its four contiguous counties. SEPTA's governing and policy making body is a 15-member board, which has discretionary powers over such matters as SEPTA's operating and capital budgets and its standard of services.[3]
As required by Section 1741(15) of the Act, 74 Pa.C.S. § 1741(15), SEPTA held public hearings on a proposed fare increase, and the board appointed hearing examiners to preside at the hearings. The hearing examiners prepared a record of the hearings and issued a report and recommendations, which the board was to consider at a scheduled public meeting.
A week before the scheduled public meeting, board members met privately with SEPTA staff to discuss the hearing examiners' recommendations. The staff informed the board that adoption of the recommendations would result in a shortfall in the amount of revenue the increase was designed to generate, and the board asked SEPTA staff to prepare alternative fare scenarios.
Alternatives were submitted to the board and announced publicly for the first time at the scheduled public meeting, held on June 21, 2001. The board allowed public comments at the meeting and, thereafter, adopted a modified tariff increasing the rate of the City Division fare by ten cents more than that proposed and discussed at the earlier hearings.
Appellants appealed to the trial court and requested a supersedeas. At the supersedeas hearing, Appellants learned for the first time of the private meeting between the board and SEPTA staff. Appellants argued to the trial court that the private meting violated the Sunshine Act[4] and SEPTA regulations. Appellants also argued that the board abused its discretion and/or committed an error of law by failing to resolve disputed issues of fact and by failing to explain the reasonableness of the wide disparity in fares among different ridership groups.
The trial court noted testimony by Faye Moore, SEPTA's Chief Financial Officer and Treasurer, who stated that she and John McGee, SEPTA's Chief Director of Revenue and Ridership Management, met with SEPTA board members on June 14, 2001, to provide a financial briefing to the board and answer questions the board had concerning the hearing examiners' report. According to Ms. Moore's testimony, the board was informed at the briefing that the hearing examiners' recommendations would not generate sufficient funds to meet SEPTA's budget, and the board requested Ms. Moore and Mr. McGee to prepare alternative proposals.
The trial court next reviewed the provisions of the Sunshine Act, which requires that "[o]fficial action and deliberations by a quorum of members of an agency shall take place at a meeting open to the public." Section 704 of the Sunshine Act, 65 *813 Pa.C.S. § 704. "Official action" includes recommendations made pursuant to statute, the establishment of policy, decisions on agency business, or a vote taken on any motion, proposal, regulation, ordinance or report. Section 703 of the Sunshine Act, 65 Pa.C.S. § 703. The Act defines "deliberation" as "the discussion of agency business held for the purpose of making a decision." Id.
The trial court concluded that the Sunshine Act requires that the decision making process, rather than the information gathering process, be open to the public. The trial court held that the private meeting at which the board asked questions and received information did not violate the Sunshine Act.
The trial court next determined that the Act provides Appellants with a reasonable opportunity to comment, but does not contemplate an adversarial proceeding through which disputed issues of fact must be resolved.[5] The trial court noted that its appellate review is limited to determining whether the board committed a manifest and flagrant abuse of discretion, Section 1741(a)(15) of the Act, 74 Pa.C.S. § 1741(a)(15), and does not include an inquiry or determination as to the reasonableness of the fare increases. Finally, the trial court concluded that any alleged failure by the board to explain the reasonableness of the fare increase did not amount to a flagrant abuse of discretion.
On appeal to this Court,[6] Appellants first argue that the trial court erred in determining that the June 14, 2001 meeting was not in violation of the Sunshine Act. Relying on Ackerman v. Upper Mt. Bethel Township, 130 Pa.Cmwlth. 254, 567 A.2d 1116 (1989), Appellants assert that the meeting was a "deliberation" within the meaning of the Sunshine Act because the subject matter of the private meeting involved a decision pending before the board. In response, SEPTA contends that the board's discussion with SEPTA's own employees is distinguishable from the ex parte meeting that was at issue in Ackerman. SEPTA further points out that the Ackerman court refused to invalidate action taken at a public meeting that occurred after the private meeting that allegedly violated the Sunshine Act.
In subsequent decisions, this Court has repeatedly held that official action taken at a later, open meeting cures a prior violation of the Sunshine Act. See League of Women Voters of Pennsylvania v. Commonwealth, 683 A.2d 685 (Pa.Cmwlth.1996) (violation of the Sunshine Act was cured by a subsequent open meeting at which the official action was taken); Moore v. Township of Raccoon, 155 Pa.Cmwlth. 529, 625 A.2d 737 (1993) (violation of Sunshine Act was cured when commissioners held open meeting afterwards).
The record here reflects that the board held a special public meeting on June 21, 2001, during which members of the public were afforded the opportunity to comment. Pursuant to the cases cited above, we conclude that any alleged violation of the Sunshine Act was cured by this *814 subsequent public meeting, at which the board's official action was taken.
Appellants also argue that the trial court misconstrued the scope of its appellate review in declining to determine whether the newly adopted fares were reasonable. Appellants argue that the statutory language granting SEPTA the power to charge fares "at reasonable rates to be determined exclusively by it, subject to appeal," 74 Pa.C.S. § 1741(a)(15), means that the board is subject to a substantive restraint of "reasonableness." Appellants acknowledge, however, that the same statutory provision states that the grounds for appeal are limited to a manifest and flagrant abuse of discretion or error of law.
Appellants assert that the record reflects gross disparities in the relative burdens placed on different ridership groups that SEPTA failed to support and/or adequately explain. Appellants also contend that the board failed to weigh evidence and arguments presented in opposition to the fare increases.
The hearing examiners heard more than 16 hours of testimony, and their report summarizes seven hundred pages of hearing transcripts and hundreds of pages of submitted documents and letters. The evidence of record includes testimony by Daniel Fleishman, whose consulting firm prepared a fare policy study. Mr. Fleishman stated that, while the proposed base cash fare of $1.90 would become one of the highest in the country, the price of two trips, at $2.60, would remain one of the lowest. Mr. Fleishman opined that SEPTA's proposed fare increase was reasonable and he stated that the agency had done a good job in balancing its own revenue needs against the needs of its customers. After reviewing the evidence in detail, the hearing examiners concluded that SEPTA's fare proposal was justified in large part and recommended that the board adopt the proposal, with some suggested modifications.
Contrary to Appellants' assertions, the record reflects that SEPTA provided adequate explanation and evidentiary support for the fare structures. Moreover, the trial court correctly interpreted the Act as precluding an appellate inquiry into the reasonableness of the fare proposal.
Accordingly, we affirm.

ORDER
AND NOW, this 4th day of January, 2002, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby affirmed.
NOTES
[1] This case was originally argued before a panel consisting of Judge Pellegrini, Judge Kelley and Senior Judge Rodgers. Because of the untimely death of Senior Judge Rodgers, the case was submitted to Senior Judge Narick as a member of the panel.
[2] 74 Pa.C.S. §§ 1701-1785.
[3] Section 1712 of the Act, 74 Pa.C.S. § 1712.
[4] 65 Pa.C.S. §§ 701-716.
[5] Section 1725 of the Act, 74 Pa.C.S. § 1725, states that all public hearings are to be conducted so as to insure that members of the public are afforded a reasonable opportunity to comment orally and/or in writing and that reasonable and legitimate questions from members of the public are answered.
[6] Our scope of review is limited to determining whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. Southeastern Pennsylvania Transportation Authority v. Association of Community Organizations for Reform Now, 128 Pa. Cmwlth. 292, 563 A.2d 565 (1989).