Pennsylvania Supply Company *v.* National
Casualty Company, Appellant.

Argued March 10, 1943.  Before KELLER, P. J., BALD-

218

RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY, and RENO, JJ.

*H. Rook Goshorn*, with him *Metzger & Wickersham*, for appellant.

*F. Lyman Windolph*, with him *Macey E. Klein*, for appellee.

OPINION BY HIRT, J., April 16, 1943:

Plaintiff, maintaining that the bond executed by defendant as surety inured to its benefit, brought this action to recover for materials for which it was not paid by the principal, a building contractor. The court directed a verdict for plaintiff (the amount is not in dispute) and judgment was entered thereon. Defendant contends that plaintiff is not a third party beneficiary under the bond and that the court erred in refusing to enter judgment in its favor n.o.v. The precise questions raised in this appeal have not been before our appellate courts but in the application of settled principles, the judgment will be affirmed.

Sylvia O. Ferry on June 28, 1937, entered into a contract with Granite Construction Company for the construction of a dwelling house in Harrisburg at a cost of $17,000. Immediately before the execution of the contract the parties entered into a stipulation against the filing of mechanics or other liens. The stipulation was filed of record in the prothonotary's

office in Dauphin County on June 29, 1937, before any labor or materials were furnished. On the same day a bond in the sum of $16,000 was delivered to Sylvia O. Ferry as obligee executed by the Granite Construction Company as principal and the defendant as surety. The bond recites that the "contract is hereby referred to *and made a part hereof as fully and to the same extent as if copied at length herein.*" The condition of the bond is: "That if the above bounden Principal shall well and truly keep, do and perform, *each and every, all and singular, the matters and things in said contract set forth* and specified to be by the said Principal kept, done and performed at the time and in the manner in said contract specified, *and* shall pay over, make good and reimburse to the above named Obligee, all loss and damage which said Obligee may sustain by reason of failure or default on the part of said Principal, then this Obligation shall be void; otherwise to be and remain in full force and effect." Under "General Conditions" the building contract provides: "...... the Contractor shall provide and *pay for all materials,* labor, tools, water, power and other items necessary to compete the work." (Italics added.)

Since the decision in *Com. v. Great American Indemnity Co.*, 312 Pa. 183, 167 A. 793, adopting the rule of the Restatement, Contracts, (§§133, 135, 139, 345) and overruling *Greene Co. v. Southern Surety Co.*, 292 Pa. 304, 141 A. 27, it is no longer an open question whether a materialman has a direct right of action on a construction bond if the bond inures to his benefit. As indicated in the often-quoted language of Professor Arthur L. Corbin of Yale Law School (Selected Readings on the Law of Contracts, p. 668): "We should now start with the general proposition that two contracting parties have power to create rights in a third party. This has long been a general rule; it is not an 'exception.' 'Privity' is not necessary; the third party need not

be a 'promisee,' nor need he give consideration ......
The third party has an enforceable right if the surety
promises in the bond, either in express words or by
reasonable implication, to pay money to him ...... In
the case of a surety bond for the payment of money,
if there is a promise to pay money to an ascertainable
person, the fact that he is a third person who gave
no consideration for the promise does not prevent him
from enforcing it ...... The words used in building
contracts and in accompanying surety bonds are now
usually such that they are, and should be, interpreted
as a promise by the surety to pay laborers and material-
men in case of default by the contractor ...... In this
class of cases it is sound policy to interpret the words
liberally in favor of the third parties." *Com. v. Great
American Indemnity Co.,* supra.

This doctrine of liberal construction has special ap-
plication in favor of donee beneficiaries under the de-
clared public policy of the State that they who furnish
labor and materials on public construction shall be
paid. Act of June 23, 1931, P. L. 1181, 8 PS 146.
However as to private structures the parties are free
to make any kind of contract they choose, or none at all.
And though, as Professor Corbin suggests, "social
policy" approves the practice of protecting all laborers
and materialmen, courts of their own motion may not
write the provision into a private surety bond. The
covenant in such bonds must be construed to mean
what the parties intended as ascertained from the
language used. Cf. *Equitable Trust Co. v. Surety Co.,*
214 Pa. 159, 63 A. 699.

It is appellant's contention that the 'general condi-
tions' of the contract were intended merely as a divi-
sion of responsibility between the parties to it and that
the bond by incorporating the contract afforded pro-
tection against loss to the obligee only. The difficulty
with this position is that the bond, by including the

contract in its terms, insured performance by the contractor of "each and every, all and singular, the matters and things in said contract set forth" and the contract specifically provides that "the Contractor shall provide and *pay for* all materials". To "pay for" materials was as much an obligation of the contractor as to "provide" them.

A corporate surety in business for profit is not a 'favorite of the law.' "While such corporations may call themselves surety companies, their business is in all essential particulars that of insurance. Their contracts are usually in the terms prescribed by themselves, and should be construed most strictly in favor of the obligee", (*Phila. v. Fidelity & Deposit Co.*, 231 Pa. 208, 80 A. 62) and such donee beneficiaries as come within its terms. We think it clear that the instrument in question was both a construction and a materialmen's bond. It is no objection that both conditions were incorporated in a single instrument. A bond may contain any number of conditions and a breach of one of them will impose liability on the surety. What may have prompted the obligee to require protection for third parties, also, is unimportant. She was protected by the stipulation against liens and her motives may have been altruistic or even sentimental, without affecting the obligation of the surety. Moreover, under the applicable rule of construction we cannot agree with appellant that there is no liability in the absence of specific language in the bond insuring the payment of materialmen. Cf. *Pittsburgh v. Parkview Const. Co.*, 344 Pa. 126, 23 A. 2d 847. We take the opposite view. Having undertaken to insure the performance of *all* the obligations of the contractor, if the surety intended to avoid contingent liability for the payment of materialmen, it should have incorporated that exception in its bond. "Where a surety for a contractor . . . . . . agrees in terms with the owner that the contractor will

pay for labor and materials, those furnishing labor or materials have a right against the surety as third party beneficiaries of the surety's contract, unless the surety's contract *in terms* disclaims liability to such persons": Restatement, Security, §165. (Italics added.)

In *Fleck-Atlantic Co. v. Insurance Co.*, 326 Pa. 15, 191 A. 51, relied upon by appellant, the language of the bond was identical with the bond here in question. But there the contract expressly provided for the giving of two bonds—a performance bond and a payment bond—and only one bond was given. The court said: "As two bonds were required, (unless the payment bond was waived) and as the phraseology of the bond in suit clearly conformed to Article XVIII [relating to performance] and not to the other provision, the parties in executing the bond must have intended that it should be construed only as a bond for performance by the sub-contractor of his obligation to the general contractor." *Sch. Dist. v. New Amsterdam Cas. Co.*, 98 Pa. Superior Ct. 221, cited by appellant, decided in 1930, followed the *Green County* case, which is no longer the law.

Raising a second question, appellant contends that Mrs. Ferry prejudiced the surety by overpaying the contractor and therefore it as surety is relieved from liability to the plaintiff in any event. The contract required payments in specified amounts as the work progressed. The contractor abandoned the work before completion but plaintiff furnished the material before the default. There is testimony that the contractor at the time of the default had been paid more than $2,000 over and above the total amount then due under the terms of the contract. Since the verdict was directed against the defendant, it is entitled to the benefit of this evidence (note 12, 6 Stand. Pa. Prac., p. 74, §89) and as between the obligee and the surety, undoubtedly the overpayment was prejudicial. There

is a conflict of authority however as to whether the prejudice affects the claims of donee beneficiaries. Under the better rule the surety is not released. The theory is that the liability created by the bond in favor of donee beneficiaries is independent of that assumed as to the obligee and cannot be affected by the subsequent acts of the obligee. "The donee beneficiary acquires a right at once upon the making of the contract and that right becomes immediately indefeasible": *Logan v. Glass*, 136 Pa. Superior Ct. 221, 7 A. 2d 116. The rule appears thus in Restatement, Contracts, §142: "Unless the power to do so is reserved, the duty of the promisor to the donee beneficiary cannot be released by the promisee or affected by any agreement between the promisee and the promisor, ......" The reason for the rule is well stated in *Lumber Co. v. Peterson*, 124 Iowa 599, 100 N. W. 550: "Even if the surety should be held released, on this account, as to the owner, it would not follow that it is also released as to the claims of the subcontractors. The bond being given for the benefit of the latter as well as the former, their right of action cannot be affected by an act for which they are in no manner responsible. Their right is not derived from, nor held under, the owner of the building, but is an independent right, of which they are not to be deprived save by their own act or default." See also: *Maryland Casualty Co. v. Portland Const. Co.*, 71 F. (2d) 658; 4 Williston on Contracts, Rev. Ed. §1243, note 2; 9 Am. Jur., Bldg. and Const. Contracts, §108; 77 A.L.R. 195 et seq; 118 A.L.R. 97.

Judgment affirmed.