569 A.2d 978

**Barbara H. CONNERS, Taxpayer individually, and on behalf of other taxpayers similarly situated, Appellant,**

v.

**WEST GREENE SCHOOL DISTRICT et al., Appellees.**

Commonwealth Court of Pennsylvania.

Argued Oct. 2, 1989.

Decided Dec. 21, 1989.

Reargument Denied March 2, 1990.

Petition for Allowance of Appeal
Denied July 31, 1990.

96

Peter M. Suwak, Washington, D.C., for appellant.

Barbara A. Rizzo, with her, Robert T. Crothers, Peacock, Keller, Yohe, Day & Ecker, Washington, D.C., for appellees.

DOYLE, Judge.

This litigation began when a taxpayer, Barbara H. Conners, sought to overturn the decision of the West Greene School Board (Board) to adopt a budget for the fiscal year 1988–89 beginning July 1, 1988, authorizing a five mill property tax increase. The Court of Common Pleas of Greene County sustained West Greene School District's (District) demurrer to Conners' statutory appeal and she appeals from that order.[1]

Our scope of review of a trial court's order sustaining preliminary objections in the nature of a demurrer is to

1. In addition to the statutory appeal presently before us, Appellant filed a complaint in equity and a complaint for declaratory judgment asserting in the latter a violation of the Sunshine Act, Act of July 3, 1986, P.L. 388, 65 P.S. §§ 271–286. The trial court sustained the demurrer in the declaratory judgment action and relied upon by reference its opinion in that suit to answer the Sunshine Act challenge raised in the statutory appeal action. The court, however, overruled the demurrer regarding certain allegations in the complaint in equity, which action is still pending before the common pleas court. Appellant has advised us that her appeal of the declaratory judgment action was to be withdrawn contemporaneously with her filing of the brief in this matter because the same allegations of a Sunshine Act violation are also set forth in this appeal.

determine whether the trial court's interpretation of the law is correct, *i.e.*, whether or not the facts pled are legally sufficient to permit the action to continue. *Cooley v. East Norriton Township*, 78 Pa.Commonwealth Ct. 11, 466 A.2d 765 (1983). It is, therefore, of critical consequence that we review the pertinent allegations pled in Appellant's complaint. They are as follows:

6. The adoption of this budget, with the concomitant five mill increase in tax rates, is contrary to law and otherwise improper, based upon the following:

(a) Initially, the final budget was not passed since a motion to cut various programs was defeated. At some point, after the initial opening of the meeting, board member Yoders was brought in to cast the decisive vote. Further, pursuant to published news accounts, following a brief recess, during which several board members grouped together apparently to discuss the matter, the budget motion was again introduced and approved. A true and correct copy of said news account, dated July 1, 1988, from the Observer–Reporter, is here attached as Exhibit "A".

(b) Pursuant to the Sunshine Act (65 P.S. § 271, et seq.), the above described procedure is unlawful....

7. Additionally, and alternatively, the adoption of the budget, with the concomitant five mill increase in property tax, constitutes arbitrary conduct, a palpable abuse of discretion, knowing waste of taxpayer resources, or is otherwise improper, based upon the following:

(a) The Board improperly budgeted tax revenue in fiscal year 1987–1988. More specifically, revenues anticipated were calculated on the basis of a thirty per cent property tax ratio. However, said thirty per cent ratio was illegal as inconsistent with the state board equalization amounts, as found by the Greene County Court in the tax appeal of C.N.G. Coal. As a result of that appeal, the Board has been forced to borrow approximately Two Hundred Five Thousand Dollars ($205,-000.00) for its 1987–88 unfunded financial obligations.

The Board has done so from the Community Bank at a rate of 8.25 per cent interest....

(b) A [bond] issue for the construction of a new middle school in an amount in excess of five million dollars is illegal and improper. More specifically, the bond issue never received approval of the electorate in a referendum as required by 24 P.S. § 6–632....

. . . .

(d) Numerous budget items constitute the apparent knowing waste of taxpayer resources. These items include, but are not limited to the following:

1. The cafeteria fund has sustained a substantial loss (approximately $45,000.00). This loss, should not have occurred with proper oversight especially as mandated by 24 P.S. § 5–504. This loss should be surcharged, but not passed on to the taxpayers in the form of increased taxes.

Appellant raises four issues on appeal.

## FAILURE TO ANTICIPATE REDUCTION IN REAL ESTATE TAX REVENUES

Appellant first alleges that the District failed to anticipate a successful taxpayer's appeal challenging the assessment ratio and a subsequent reduction in tax revenues. She contends that it was thus forced to borrow approximately $205,000 at an interest rate of 8.25% and to raise taxes five mills to satisfy that debt. She further alleges that the District committed a "misconception of law" when it calculated the tax in violation of Section 704(c) of the Fourth to Eighth Class County Assessment Law (Assessment Law), Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. § 5453.704(c), which reads:

The court, after determining the market value of the property pursuant to subsection (b)(1), shall then apply the established predetermined ratio to such value unless the corresponding common level ratio determined pursuant to subsection (b)(2) varies by more than fifteen per

centum (15%) from the established predetermined ratio, in which case the court shall apply the respective common level ratio to the corresponding market value of the property.

She argues that the District, contrary to statute, calculated anticipated revenues on the basis of a 30% ratio rather than on the established predetermined ratio of 20.7%. She contends that since the common level ratio varied more than fifteen per cent from the established predetermined ratio, the District should have calculated the tax based on the predetermined ratio and in failing to do so, it based its budget on a higher estimation of future revenue than it should have.

■ We are constrained to avoid interfering with the discretionary exercise of a school board's power unless the action is based on a "misconception of law, ignorance through lack of inquiry into the facts necessary to form an intelligent judgment, or the result of arbitrary will or caprice." *Zebra v. School District of the City of Pittsburgh*, 449 Pa. 432, 437, 296 A.2d 748, 750 (1972) (quoting *Hibbs v. Arensberg*, 276 Pa. 24, 26, 119 A. 727, 728 (1923)).

■ The District has committed no "misconception of law." Appellant has misinterpreted Section 704 of the Assessment Law, 72 P.S. § 5453.704. That section pertains to appeals to the common pleas court by those who allege a grievance by an assessment of the County Board of Property Assessment, Appeals and Review. It does not pertain to the *District's* duties with respect to proper calculation of tax ratios. Appellant has failed to show that the District's duties include determining market values and ratios for the assessment of taxes on the basis of individual taxpayer challenges to the tax assessment on their individual properties, or on the resultant changed assessment ratios if such is the result. Rather, under the Assessment Law, the chief assessor has the duty to "value all subjects and objects of local taxation" and it is the duty of the *Board of County Commissioners* to calculate the established predetermined ratio. *See* Section 602 of the Assessment Law, 72 P.S.

§ 5453.602. Neither has Appellant shown that it is the duty of the District to anticipate a possible loss of revenues due to a taxpayer appeal. Furthermore, mere unsupported allegations that the District could have borrowed money at a rate less than 8.25% are insufficient to have the members of the Board surcharged. Thus, the trial court correctly found that the District did not commit a "misconception of law" and properly sustained the demurrer.

## BOND ISSUE CONCERNING CONSTRUCTION OF MIDDLE SCHOOL

Next, Appellant alleges that the bond issue for the construction of a new Middle School never received approval from the electorate in a referendum as required by Section 632 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 6–632, and thus the debt should not be passed on to the taxpayers. The District, on the other hand, asserts that Section 202 of the Local Government Unit Debt Act (Unit Debt Act), Act of July 12, 1972, P.L. 781, *as amended*, 53 P.S. § 6780–52, is the controlling law and that electoral approval was therefore unnecessary.

■ In *Mellinger v. Department of Community Affairs*, 111 Pa.Commonwealth Ct. 377, 533 A.2d 1119 (1987), we held that Section 632 of the School Code has been repealed by the Unit Debt Act and that Section 202 of the Unit Debt Act controls with regard to the appropriate limits of a district's nonelectoral debt. Here, electoral approval was not required. Thus, Appellant's allegations in this regard lack merit.

■ Appellant also takes issue with the trial court's ruling that the court lacked jurisdiction to decide this issue since the proper procedure to attack a bond issue is by petition to the Department of Community Affairs pursuant to Section 901(b) of the Unit Debt Act, 53 P.S. § 6780–401(b). Section 901(b) provides:

Exclusive jurisdiction is hereby conferred on the *department* [of Community Affairs] to hear and determine all procedural and substantive matters arising from the proceedings of a local government unit taken pursuant to this act, including without limitation, the regularity of the proceedings, the validity of the bonds ... of the local government unit, and the legality of the purpose for which such obligations are to be issued.

Appellant cites *Bundy v. Belin*, 501 Pa. 255, 461 A.2d 197 (1983), for the proposition that a common pleas court does have jurisdiction to entertain a complaint on a tax levy. In *Bundy*, the Supreme Court determined that the common pleas court had jurisdiction to decide whether a tax was illegal when it was levied to pay for accrued interest and principal due on tax anticipation notes that were unpaid *and not incurred pursuant to the Unit Debt Act.* Since the unfunded indebtedness was not incurred pursuant to the Unit Debt Act, the Department in *Bundy* lacked jurisdiction in the matter. Here, the Unit Debt Act specifically vests in the Department of Community Affairs jurisdiction to decide "matters arising from proceedings of a local government unit taken pursuant to [the Unit Debt Act]" with respect to the issuance of bonds. Therefore, the trial court properly decided it was without jurisdiction to decide the propriety of the bond issue.

## THE CAFETERIA FUND

Appellant next avers in her complaint that the Board failed in its oversight function pursuant to Section 504 of the School Code, 24 P.S. § 5–504, and as a result, it sustained a loss of $45,000, thus abusing its discretion and violating the School Code. Section 504 provides:

Cafeterias

(a) The board of school directors in any school district shall have power to establish, equip, maintain, and operate cafeterias, or to contract for any services necessary for the operation of a food service program, in any of the schools under its jurisdiction, whenever in its judgment it

is deemed advisable to do so, and shall have power to appoint such directors, supervisors, or other employes as are necessary, and set and pay their salaries.

(b) The cost of housing, equipping and operating such cafeterias may be charged against the funds of the school district.

(c) The food served shall be sold to the pupils, teachers, and school employes of the cafeterias at such price as will not materially exceed the cost of the operation.

(d) It shall be legal for boards of school directors to authorize the proper school employe to purchase perishable food supplies for cafeterias without advertising for bids.

(e) There shall be a separate cafeteria fund, and all payments from said fund shall be made upon a special order drawn by the school employe authorized to purchase food supplies. Said employe shall present each month to the board of directors, for approval, a statement of receipts and expenditures.

(f) The accounts shall be subject to examination by the auditors of the school district in like manner as other accounts of the school district. Any balance of funds accruing from the operation of the cafeteria must be used only for the improvement or maintenance of the cafeteria and may not be used for other purposes.

■ As the trial court astutely observed in its opinion, Appellant argues that the District violated Section 504 without explaining how or when the Board committed a violation. She recites conclusions and fails to plead facts that the District can deny. She does not cite any School Code section which states that when a school district sustains a loss in its cafeteria program, it violates the law. Thus, the facts pled are legally insufficient to support a cause of action.[2]

---

**2.** Appellant contends that her vague pleadings are amendable. She does not assert that she sought permission from the trial court to amend, however.

Appellant also argues that the trial court erred in its determination that it lacked jurisdiction to entertain this issue because there was an exclusive adequate administrative remedy provided by the School Code. Since the trial court disposed of the issue on the substantive merits of the demurrer, the jurisdictional issue is moot.

## SUNSHINE ACT ISSUE

Finally, Appellant contends that the District committed a "Sunshine Act" violation when it adopted its budget. Section 4 of the Sunshine Act, 65 P.S. § 274, requires public agencies, including school boards, to hold meetings and hearings open to the public. Section 4 provides:

### Open meetings

Official action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public unless closed under section 7, 8 or 12.[3]

Appellant bases her allegation of a Sunshine Act violation on a newspaper article which read in pertinent part:

A motion to cut the programs, however, first was defeated. Only after a brief recess, during which several board members grouped together apparently to discuss the matter, was the motion again introduced, and approved.

■ After careful review of Appellant's pleadings, we do not agree with Appellant that the facts pled, with respect to this issue, are legally sufficient to permit the action to continue. Appellant alleges only that at the meeting, which included discussion of numerous issues, the Board members *apparently* "discussed the matter." Even assuming that the Board members informally discussed the budget, this would not constitute a violation of law. In the words of Judge Kiester:

3. Section 8 of the Sunshine Act pertains to certain designated times when an agency may hold an executive session but none apply to adopting a budget. Section 7 refers to exceptions to open meetings and clearly does not apply here. Section 12 applies only to General Assembly meetings.

[T]here is a substantial difference between discussion and deliberation. A school board member is not foreclosed by the Act from discussing and debating informally with others including school board members the pros and cons of particular proposals and matters that may be on the board's agenda. The [Sunshine] Act does not prohibit a member from inquiring, questioning and learning about the budget and other school issues only at a public meeting.

Furthermore, the "facts" that were pled, seeing as they were based solely on an article in the local newspaper and not upon any affiant's personal knowledge, are perhaps the most blatant form of hearsay imaginable; certainly they are devoid of all reasonable inferences that what is printed is in fact accurate. Moreover, the article itself uses the descriptive adjective "apparently" which further underscores its unreliability.

Accordingly, based on the foregoing discussion, the order of the Court of Common Pleas of Greene County is affirmed.

### ORDER

NOW, December 21, 1989, the order of the Court of Common Pleas of Greene County in the above-captioned matter is hereby affirmed.