BERKS PRODUCTS CORPORATION

v.

ARCH INSURANCE COMPANY, Appellant.

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2012.

Decided July 11, 2013.

Reargument Denied Aug. 27, 2013.

Francis X. Clark, King of Prussia, for appellant.

Thomas O. Williams, Camp Hill, for appellee.

BEFORE: LEAVITT, Judge, and McCULLOUGH, Judge, and COLINS, Senior Judge.

OPINION BY Judge McCULLOUGH.

Arch Insurance Company (Arch) appeals from the March 23, 2012 order of the Court of Common Pleas of Northampton County (trial court), granting the motion for summary judgment filed by Berks Products Corporation (Berks). Berks had filed a civil action with the trial court seeking to recover $52,679.26 from Arch as the surety on a payment bond which Arch had issued on behalf of Skepton Construction, Inc. (Skepton). We affirm.

*Background and Procedural History*

Skepton entered into an agreement with the Wilson Area School District (District) to be the general contractor for the construction of a new intermediate school. Under its agreement with the District,

Skepton was required to secure a payment bond in order to guarantee its payment obligations. Skepton secured its payment bond through Arch. The bond document included the following language:

> [T]he terms and conditions of this Bond are and shall be that *if the Principal and any subcontractor of the Principal to whom any portion of the work under the Agreement shall be subcontracted,* and if all assignees of the Principal and of any such subcontractor, *promptly shall pay or shall cause to be paid, in full, all money which may be due any claimant supplying labor or materials* in the protection and performance of the work in accordance with the Agreement and in accordance with the Contract Documents ... for material furnished or labor supplies or labor performed, then this Bond shall be void; otherwise, the Bond shall be and shall remain in force and effect.

(R.R. at 90a) (emphasis added).

Skepton thereafter entered into a subcontract with R.A. Tauber, Inc. (Tauber) for the concrete work on the project. Tauber subsequently contracted with Berks to provide materials for its subcontract work.[1] In exchange, Tauber promised to pay Berks the agreed-upon amount set forth in Berks' invoices. Berks routinely supplied Tauber with materials as requested, and Tauber paid for some but not all of the materials. Specifically, Tauber failed to pay for $52,679.26 worth of materials.

Skepton later terminated its contract with Tauber, and Tauber subsequently filed for bankruptcy. Berks then filed a civil action against Arch seeking to recoup the money owed under Arch's surety bond. Arch filed an answer with new matter denying liability and asserting that its

---

1. Berks provided mortar break, Portland lime, styrofoam, stone anchors, adhesive, cathers, rebar, and other related materials to complete the concrete work on the project.

principal, Skepton, had made full payment to Tauber for the materials which Tauber had furnished to the project, which acts as a complete bar to liability under section 3939(b) of the Commonwealth Procurement Code (Code), 62 Pa.C.S. § 3939(b). Section 3939(b) of the Code, also known as the "safe harbor" provision, provides that "[o]nce a contractor has made payment to the subcontractor according to the provisions of this subchapter, future claims for payment against the contractor or the contractor's surety by parties owed payment from the subcontractor which has been paid shall be barred."

Following limited discovery and the exchange of documents, Berks filed a motion for summary judgment with the trial court. Berks attached an affidavit from Thomas O. Williams, its counsel, stating that counsel for Arch had admitted that full payment had not been made to either Tauber or Berks for the materials supplied for the project. Berks also attached an affidavit from Richard Dodson, its vice president, stating that Berks was still owed $52,679.26 for materials incorporated into the project. Arch filed an answer to this motion which included an affidavit from Kevin Frantz, president of Skepton, verifying that Skepton had in fact paid Tauber in full for all materials which had been furnished for the project by Berks. Following oral argument, the trial court issued an opinion and order granting the motion for summary judgment in favor of Berks and against Arch in the amount of $52,679.26.

In its opinion, the trial court identified the issues as whether the language of Arch's bond waived the "safe harbor" provision of the Code and whether Arch's principal, Skepton, had fully paid either Tauber or Berks such that the "safe har-

bor" provision would even be applicable. The trial court noted that the "safe harbor" provision of the "Prompt Pay Act" (PPA)[2] applies to all surety bonds regardless of whether or not the PPA is explicitly incorporated into the language of the bond. (Trial court op. at 8.) However, the trial court concluded that the bond language cited above waived any "safe harbor" protection and expanded Skepton's obligations as the general contractor beyond this protection to ensure that all "suppliers or material men such as Berks" get paid. (Trial court op. at 12.)

The trial court rejected Arch's claim that our decision in *Trumbull Corporation v. Boss Construction, Inc.*, 768 A.2d 368 (Pa.Cmwlth.2001), controls the outcome of this case and requires a ruling in its favor. Applying *Trumbull* to the present case, the trial court indicated that the holding in *Trumbull* simply confirmed its duty to carefully examine the bond language herein to determine whether the "safe harbor" provision had been waived, as Berks alleged.

Additionally, the trial court cited *Diener Brick Company v. Mastro Masonry Contractor*, 885 A.2d 1034 (Pa.Super.2005), wherein our Superior Court essentially affirmed a common pleas court judgment in favor of a supplier and against a general contractor. In that case, the general contractor entered into a joint payee agreement with a subcontractor and a supplier whereby the general contractor was the issuer of checks jointly payable to the subcontractor and supplier and specifically agreed to reserve up to $250,000 for the supplier. Our Superior Court concluded that such an agreement overrode the "safe harbor" provision and created a direct

**2.** Sections 3931 through 3939 of the Code are sometimes referred to as the "Prompt Pay Act," and the trial court utilized this reference in its opinion.

duty on the part of the general contractor to pay supplier.

The trial court also noted that Arch's answer to Berks' motion for summary judgment did not deny that Berks provided materials as it claimed for the project, or that $52,679.26 remains due and owing for the same. Hence, the trial court concluded that there was no factual dispute remaining to be decided and, thus, summary judgment was appropriate. Arch filed a notice of appeal with our Superior Court.[3] By order dated June 28, 2012, the Superior Court transferred the matter to this Court.

On appeal, Arch argues that the trial court erred in concluding that the language of the payment bond issued to Skepton effectively waived the "safe harbor" provision of section 3939(b) of the Code. Arch also argues that the trial court erred by disregarding critical terms of Arch's bond to justify its conclusion, thereby effectively overruling this Court's decision in *Trumbull*. Finally, Arch argues that the decision of the trial court improperly contravenes the requirements of the Public Works Contractors' Bond Law of 1967, Act of December 20, 1967, P.L. 869, *as amended*, 8 P.S. §§ 191–202 (Bond Law). We disagree with each of these arguments.

## Discussion

Our scope of review of a trial court's order granting summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Smith v. Township of Richmond*, 54 A.3d 404 (Pa.Cmwlth.2012). Summary judgment is appropriate only if there is no genuine issue of any material fact as to a necessary element of the cause of action. *Id.* Thus, summary judgment may be entered only when, after examining the record in the light most favorable to the non-moving party and resolving all doubts as to the existence of a genuine issue of material fact against the moving party, the moving party is clearly entitled to judgment as a matter of law. *Id.*

### "Safe Harbor" Provision

Arch first argues that the trial court committed an error of law in holding that the "safe harbor" provision of the Code did not apply to the standard terms of the payment bond for a public construction project. More specifically, Arch argues that because Skepton fully paid Tauber for the materials supplied by Berks, Berks' claim is barred by section 3939(b) of the Code. As noted above, section 3939(b) provides that "[o]nce a contractor has made payment to the subcontractor according to the provisions of this subchapter, future claims for payment against the contractor or the contractor's surety by parties owed payment from the subcontractor which has been paid shall be barred." 62 Pa.C.S. § 3939(b).

Section 3(a)(2) of the Bond Law addresses the bond requirements for public works contracts, providing as follows:

(a) Before any contract exceeding five thousand dollars ($5,000) for the construction, reconstruction, alteration or repair of any public building or other public work or public improvement, including highway work, of any contracting body is awarded to any prime contractor, such contractor shall furnish to the contracting body the following bonds, which shall become binding upon the awarding of said contract to such contractor:

...

3. Following Arch's filing of a statement of matters complained of on appeal in accordance with Pa.R.A.P. 1925(b), the trial court issued a further opinion in support of its order reiterating its reasons for granting summary judgment.

(2) A payment bond at one hundred percent of the contract amount. Such bond shall be solely for the protection of claimants supplying labor or materials to the prime contractor to whom the contract was awarded, or to any of his subcontractors, in the prosecution of the work provided for in such contract, and shall be conditioned for the prompt payment of all such material furnished or labor supplied or performed in the prosecution of the work. 'Labor or materials' shall include public utility services and reasonable rentals of equipment, but only for periods when the equipment rented is actually used at the site.

8 P.S. § 193(a)(2).

Arch asserts that the terminology of its bond cited above is standard for all payment bonds posted for public works construction projects and essentially mirrors the foregoing provision of the Bond Law. While the terminology utilized by Arch does serve the purpose of section 3(a)(2) of the Bond Law, i.e., to protect claimants supplying labor or materials for a project, this terminology goes further to ensure that the payment bond will remain "in force and effect" until such time as both the principal and any of its subcontractors makes full payment for any labor or materials supplied for the school project. Contrary to Arch's assertion, the trial court did not hold that the "safe harbor" provision did not apply; it held that the specific terminology of Arch's bond raised a question of whether the "safe harbor" provision had been waived.

### Waiver of "Safe Harbor" Provision

■ Arch next argues that the trial court erred in concluding that the language of the payment bond issued to Skepton effectively waived the "safe harbor" provision of section 3939(b) of the Code.

■ Generally, surety bonds are interpreted liberally in favor of third parties to the bonds. *Keefer v. Lombardi,* 376 Pa. 367, 102 A.2d 695, *cert. denied,* 347 U.S. 1016, 74 S.Ct. 871, 98 L.Ed. 1138 (1954). If there are multiple reasonable interpretations of a bond, the bond should be interpreted in favor of the obligee, laborers, or materialmen. *Poole v. Great American Insurance Company,* 407 Pa. 652, 182 A.2d 509 (1962). Moreover, when interpreting a bond, the language of the bond is determinative. *Salvino Steel & Iron Works, Inc. v. Fletcher & Sons, Inc.,* 398 Pa.Super. 86, 580 A.2d 853 (1990), *appeal dismissed,* 529 Pa. 62, 601 A.2d 806 (1992). Indeed, the true intent and meaning of the bond instrument are the primary determinants of the extent of a surety's liability. *Id.* Further, a court is bound by the terms of a bond when determining such liability. *J.C. Snavely & Sons, Inc. v. Web M & E, Inc.,* 406 Pa.Super. 271, 594 A.2d 333, *appeal denied,* 529 Pa. 650, 602 A.2d 860 (1991).

■ Accordingly, a surety that intends to avoid liability should include an express provision in the bond establishing the same. *Pennsylvania Supply Company v. National Casualty Company,* 152 Pa.Super. 217, 31 A.2d 453 (1943). The court in *Pennsylvania Supply Company* specifically cautioned that "[a] bond may contain any number of conditions and a breach of one of them will impose liability on the surety." *Id.* at 456.

In *J.C. Snavely & Sons, Inc.,* the court considered whether certain bond language stating that a third-party claimant may initiate suit "for such sum or sums as may be justly due" includes finance charges and attorney fees. Although not at issue, an examination of the remaining bond language in *J.C. Snavely & Sons, Inc.* proves instructive. The bond language in that case provided as follows:

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if the Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect. . . .

*J.C. Snavely & Sons, Inc.*, 594 A.2d at 334. The bond defined a "claimant" as "one having a direct contract with the Principal or with a subcontractor of the Principal for labor, material, or both" used in conjunction with the project. *Id.* This language makes clear that the bond is rendered void if the principal on the project makes a payment for all labor and/or materials supplied for a project.

As noted above, in contrast to the language used in *J.C. Snavely & Sons, Inc.*, the payment bond drafted by Arch herein provided that the bond shall remain in full force and effect until such time as both Skepton, the principal/general contractor, *and* any subcontractor, such as Tauber, make full payment for any labor and/or materials supplied for the school project. As the trial court noted, this language ensured that a third party such as Berks, which provided labor and/or materials for the project, would get paid in full.[4] While Arch asserts that other language in its

bond evidenced its intent not to waive the "safe harbor" provision, we note that the other language referenced by Arch merely includes references to the Bond Law and the predecessor "safe harbor" provision found in section 6.9 of the Public Works Contract Regulation Law.[5] This language does not address the issue of waiver. Thus, we conclude that the trial court did not err in concluding that language of Arch's payment bond effectively waived the "safe harbor" provision.

### Trumbull Decision

Contrary to Arch's assertion, the trial court did not disregard critical terms of Arch's bond to justify its conclusion, thereby effectively overruling this Court's decision in *Trumbull*. *Trumbull* involved a material supplier's claim against a payment bond for materials incorporated into a highway construction project. The material supplier alleged that the general contractor orally promised to pay the debts of the subcontractor in full if it refrained from filing suit until after the close of the general contractor's fiscal year. However, a common pleas court held that the material supplier's claim was barred by the "safe harbor" provision of the PPA because the general contractor paid the subcontractor in full. Therefore,

---

4. Our Superior Court has recognized that a general contractor may obligate itself to ensure that a material supplier gets paid. *Diener Brick Company v. Mastro Masonry Contractor*, 885 A.2d 1034 (Pa.Super.2005). In *Diener Brick Company*, the general contractor entered into a "joint-payee agreement" with a subcontractor and a material supplier. A "joint-payee agreement" is "an instrumentality specific to the construction industry, in which one contractor enters into an agreement calling for it to write a check jointly payable to two other contractors. Pursuant to the agreement, one of the contractors then takes from the check only so much to pay his labor costs and dedicates

the remainder of the check to pay for supplies obtained by the other contractors." *Id.* at 1037. By entering into this agreement, the court held that the general contractor created a "direct duty . . . to pay [the material supplier]," thereby waiving protection under the "safe harbor" provision of section 3939(b) of the Code. *Id.* at 1039.

5. Act of November 26, 1978, P.L. 1309, added by the Act of December 12, 1994, P.L. 1042, 73 P.S. § 1626.9. This section was later repealed and recodified as section 3939(b) of the Code by the Act of May 15, 1998, P.L. 358.

the common pleas court did not allow the material supplier to present any evidence concerning the alleged oral agreement.

This Court affirmed the decision of the common pleas court that the material supplier's claim was barred by the "safe harbor" provision of section 3939(b) of the Code. However, we concluded that the common pleas court erred in precluding the material supplier from presenting evidence as to the alleged oral promises of the general contractor. We explained that the requirement in the Statute of Frauds that a promise to pay the debt of another be in writing does not apply where the main purpose or leading object of the promisor is to serve its own business or pecuniary interest, which is a question for the trier of fact. Thus, we remanded the matter for a new trial on this limited issue.

In the present case, the trial court cited the full language of Arch's bond in its decision and properly held that the critical language therein imposed an obligation upon Skepton and its subcontractors to ensure that any claimant supplying labor or materials gets paid in full, thereby waiv-ing any "safe harbor" protection. This holding by the trial court does not conflict with our decision in *Trumbull.*

Moreover, we note that *Trumbull* is factually distinguishable from the present case. As noted above, the general contractor in *Trumbull* had fully paid its subcontractor, a precondition to a surety company's assertion of the protections of the "safe harbor" provision in section 3939(b) of the Code. The issue in *Trumbull* centered on the refusal of the common pleas court to allow the material supplier to present extrinsic evidence regarding an alleged, subsequent oral promise by the general contractor to pay the debt of its subcontractor, thereby waiving any "safe harbor" protection. The language of the payment bond was not at issue in *Trumbull* and, in fact, is not even referenced in our opinion in that case. To the contrary, in the present case, the language Arch incorporated into its payment bond, and whether such language effectively waived the "safe harbor" provision, represent the critical issues for review.[6]

---

**6.** Arch also cites *Manganas Printing Co. v. Joseph Bucheit & Sons Co.,* 601 F.Supp. 776 (W.D.Pa.1985) for support. In *Manganas Printing Co.,* a subcontractor instituted a breach of contract action against a general contractor and a surety seeking payment for labor performed on a project. A bond issued by the surety incorporated the general provisions of the Bond Law, including a 1–year statute of limitations commencing from the day on which the last labor was performed. The subcontractor last provided labor in October 1979, but did not initiate suit within this 1–year period. Hence, the surety alleged that the subcontractor's claim was barred and sought summary judgment before the United States District Court for the Western District of Pennsylvania (District Court).

The District Court granted the surety's motion for summary judgment, rejecting the subcontractor's claim that the terms of the payment bond, stating that it would "remain in full force and effect" until the principal's obligations were paid in full, weighed against application of the statute of limitations. The District Court interpreted this language as merely limiting "the surety's obligation to pay those sums due and owing which were not paid by the principal." 601 F.Supp. at 777.

Arch asserts that Berks is raising an identical argument, i.e., the open-ended language that a payment bond would "remain in full force and effect" until all subcontractors and suppliers have been paid expanded Arch's obligations beyond the legal restrictions imposed by the Bond Law, which must likewise be rejected. However, as the trial court noted, *Manganas Printing Co.* is a federal district court case which is not controlling in this matter. *Commonwealth v. 5043 Anderson Rd.,* 699 A.2d 1337 (Pa.Cmwlth.1997) (Pennsylvania courts are not bound by the decisions of the federal courts, except those of the United States Supreme Court). Additionally, the court in *Manganas Printing Co.* strictly enforced the statute of limitations language contained in the bond, but did not address any issue concerning the "safe harbor" provision.

### Contravention of Bond Law

■ The Bond Law served two main purposes: (1) it was designed to protect the contracting body by assuring faithful performance of the contract, and (2) it provided a substitute remedy for subcontractors who supply labor and materials and who were excluded from the protections afforded by the Mechanics' Lien Law of 1963.[7] *Preferred Fire Protection, Inc. v. Joseph Davis, Inc.*, 954 A.2d 20 (Pa.Super.2008).

There is no dispute that section 3939(b) of the Code was intended as a limitation to the recovery of a subcontractor or material supplier under section 3(a)(2) of the Bond Law. Indeed, in *Trumbull,* we held that, despite the fact that the material supplier was entitled to recovery under the Bond Law, the material supplier's claim was barred by the "safe harbor" provision of the PPA because the general contractor had made the necessary payments to its subcontractor.[8]

Similarly, in the present case, Berks was excluded from seeking redress under the Mechanics' Lien Law of 1963 inasmuch as the current project was a public project and, therefore, immune from mechanic liens. *See* Section 303(b) of the Mechanics' Lien Law of 1963, 49 P.S. § 1303(b) (providing that "[n]o lien shall be allowed for labor or materials furnished for a purely public purpose"). Thus, Berks was entitled to seek recovery under the Bond Law, and the "safe harbor" provision would generally be applicable to Skepton. However, an issue arose as to whether the language of the payment bond issued by Arch waived this provision. We fail to see how the trial court's resolution of this issue contravenes the requirements of the Bond Law. To the contrary, resolution of this issue conforms to the second main purpose of the Bond Law noted above, i.e., to ensure a remedy for subcontractors who supply labor and materials for a project.

Thus, after reviewing the record in the light most favorable to Arch, the non-moving party, we conclude that there are no genuine issues of material facts as to any necessary elements of Berks present cause of action and that Berks is entitled to judgment as a matter of law. *Smith.*

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 11th day of July, 2013, the order of the Court of Common Pleas of Northampton County, dated March 23, 2012, is hereby affirmed.

---

Moreover, we note that the present case is distinguishable because, as noted above, the precise language of the bond at issue herein extended Arch's obligation to ensure payment by both Skepton and Tauber. Thus, Arch's reliance on *Manganas Printing Co.* is misplaced.

**7.** Act of August 24, 1963, P.L. 1175, *as amended,* 49 P.S. §§ 1101–1902.

**8.** Nevertheless, as can be seen above, the protection of this "safe harbor" provision can still be waived.