J. A06014/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CADLES OF GRASSY MEADOWS, II , LLC, : <br> SUBSTITUTED PLAINTIFF TO BROWN : <br> BARK I, L.P., ASSIGNEE OF SOVEREIGN : <br> BANK, SUCCESSOR BY MERGER TO MAIN: <br> STREET BANK : <br> : <br> v. : <br> : <br> BET SHAVEI-TZION A/K/A BET : <br> SHAVEI-TZION, INTERNATIONAL : <br> AND/OR BET SHAVEI-TZIO, LTD., : <br> INTERNATIONAL, : <br> : <br> Appellant : | IN THE SUPERIOR COURT OF <br> PENNSYLVANIA <br><br><br><br><br><br><br><br><br><br><br><br><br><br> No. 1003 MDA 2015 |

Appeal from the Judgment Entered July 29, 2015
In the Court of Common Pleas of Wyoming County
Civil Division No(s).: 2007-CV-331

BEFORE: LAZARUS, J., STABILE ,J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                                  **FILED JUNE 07, 2016**

Appellant, Bet Shavei-Tzion, appeals from the November 19, 2014 Order entered in the Court of Common Pleas of Wyoming County, finding the promissory note and mortage at issue in this case in default, and lifting all stays imposed with respect to the foreclosure and sale of the mortgaged 95-acre property owned by Appellant.  After careful review, we affirm.

The relevant factual and procedural history of this case is summarized as follows.  In 2000, Rabbi Harry Dombek served in at least two capacities: (i) as president/trustee of Mount Laurel Cemetery Association ("Mount Laurel"), and (ii) as president of Appellant, a synagogue.  Mount Laurel

sought a $250,000.00 loan from Main Street Bank. Trial Ct. Op., filed 11/19/14, at 2. Needing additional collateral to secure the loan, Mount Laurel approached Appellant. Appellant owns two properties: one 95-acre property, and one 275-acre property. Appellant and Mount Laurel reached an oral agreement whereby Appellant would pledge the 95-acre property as collateral for Mount Laurel's loan in exchange for Mount Laurel's promise to donate certain funds to Appellant. *Id.* at 6. Appellant passed two corporate resolutions; one authorizing Rabbi Dombek to mortgage property as collateral for Mount Laurel's loan, and one specifically authorizing Rabbi Dombek to encumber the 95-acre property in order to use it as collateral. *Id.* at 4-6.

Thereafter, Main Street Bank as Lender executed two agreements: (i) a debt instrument ("Promissory Note") signed by Mount Laurel for the $250,000 loan; and (ii) a mortgage document ("Mortgage Agreement") signed by Appellant describing the 95-acre property to secure the Promissory Note. *Id.* at 4.

The Mortgage Agreement itself contains, in relevant part, the following definitions:

> **Borrower.** The word "Borrower" means Mount Laurel Cemetery Association, and all other persons signing the Notice in whatever capacity.
>
> . . .
>
> **Grantor.** The word "Grantor" means BET SHAVEI –TZION [Appellant].

. . .

**Indebtedness**. The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. The liens and security interests created pursuant to this Mortgage covering the Indebtedness which may be created in the future shall relate back to the date of this Mortgage.

. . .

**Note.** The word "Note" means the promissory note dated November 16, 2000, in the original principal amount of $250,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the promissory note or agreement. The maturity date of this Mortgage is June 1, 2016.

Mortgage, recorded 11/27/00, Register and Recorder Wyoming County, Book

0416, Page 0771 (emphasis in original).

The relevant terms of the Mortgage Agreement include the following:

**GRANT OF MORTGAGE.** For valuable consideration, Grantor grants, bargains, sells, conveys, assigns, transfers, releases, confirms and mortgages to Lender all of Grantor's right, title and interest in and to the following real property . . . **located in WYOMING COUNTY County,** (sic) **Commonwealth of Pennsylvania:**

> **See the exhibit or other description document which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.**

*Id.* at 0767 (emphasis in original). Attached to the Mortgage Agreement is a description of Appellant's 95-acre property. *Id.* at 0772-75. Regarding securitization, the Mortgage Agreement provides as follows:

> **CROSS COLLATERALIZATION.** In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon of Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower or any one or more of them[.]
>
> . . .
>
> **THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS MORTGAGE.**

*Id.* at 0767 (emphasis in original).

Finally, regarding default, the Mortgage Agreement provides as follows:

> **EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:
>
> > **Payment Default.** Borrower fails to make any payment when due under the Indebtedness.
> >
> > . . .
>
> **RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights and remedies provided by law:
>
> > . . .
> >
> > **Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

*Id.* at 0769-70 (emphasis in original).

In 2005, Mount Laurel filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code, and ceased making payments on the Promissory Note. Brown Bank, a predecessor in interest of Appellee,[1] brought a mortgage foreclosure action against Appellant on March 26, 2007, seeking to foreclose on both the 95-acre property and the 275-acre property.

Appellant filed a Motion for Summary Judgment, arguing, *inter alia,* that (i) foreclosure was improper where Appellant had only executed the Mortgage Agreement and not a note or suretyship agreement; and (ii) Appellant had not pledged or mortgaged the 275-acre parcel. Motion for Summary Judgment, filed 4/30/09, at 2.

On August 26, 2009, the trial court granted in part the Motion for Summary Judgment, dismissing from the mortgage complaint the 275-acre property after "concluding that [Appellant's] 275 acre parcel of land is not sufficiently described in the mortgage so as to create a lien on said parcel." Order of Court, filed 8/26/09. The court denied the Motion as to the 95-acre parcel, "concluding that there exist genuine issues of material fact as to whether the mortgage creates a lien[.]" *Id.*

---

[1] Main Street Bank merged with Sovereign Bank, and Sovereign Bank later assigned the Mortgage Agreement and Promissory Note to Brown Bank. At some time after the instant mortgage foreclosure action was filed, Appellee purchased the Mortgage Agreement and Promissory Note from Brown Bank. Trial Ct. Op., filed 11/19/14, at 2-3.

Following a non-jury trial, on November 19, 2014, the trial court found the Promissory Note and Mortgage Agreement in default, and lifted all stays imposed with respect to the foreclosure and sale of "the mortgaged premises located on Mount Zion Road, Eaton Township, Wyoming County, Pennsylvania known as Parcels Nos. 03-38-65 and 03-38-65-01." Trial Ct. Op., filed 11/19/14, at 1.

Appellant timely appealed, raising the following three issues in his Brief to this Court:

> 1. Whether the trial court committed plain error in its Court Order by mistakenly permitting the Appellee to foreclose upon a 275-acre parcel of land, despite the fact that the immediate past-President Judge of Wyoming County had previously granted summary judgment, dismissing the 275 parcel (sic) from the mortgage foreclosure action?
>
> 2. Whether the findings of fact of the trial court were supported by substantial evidence?
>
> 3. Whether the findings of the trial court are premised on errors in the application of the law?

Appellant's Brief at 4.

Appellant first argues that the trial court's November 19, 2014 Order improperly permitted foreclosure on both the 95-acre property and the 275-acre property. The use of various Parcel Numbers has led to some confusion in this case. In documents submitted to the trial court, both parties identified the 95-acre property by the Parcel Number 03-38-65-00, and the 275-acre property by the Parcel Number 03-38-67-01. The trial court's

November 19, 2014 Order does not use either of these numbers, but instead permits foreclosure on Parcel Numbers 03-38-65 and 03-38-65-01.

Appellant is correct that, because the 275-acre property was dismissed from the instant case in the August 26, 2009 Order, any subsequent order authorizing foreclosure on that property would be in error. Pennsylvania's well-established Law of the Case Doctrine bars a judge from revisiting rulings previously decided by another judge of the same court. **See Commonwealth v. Starr**, 664 A.2d 1326, 1333 (Pa. 1995). Appellant has not presented this court with any factual basis for establishing that either Parcel Number referenced in the Order at issue in this appeal in fact refers to the 275-acre property. Because the prior order dismissed the 275-acre parcel from the action, we hold that the trial court's November 19, 2014 Order pertains only to the 95-acre property. Thus, Appellant's claim that the November 11, 2014 Order improperly permitted foreclosure on the 275-acre parcel is incorrect and merits no further review.

Appellant's next two issues present two sides of the same argument: whether the trial court's factual findings are supported by the evidence and properly applied to the law.

"Upon default, the holder of a mortgage can legally proceed to enforce the terms of the mortgage . . . by foreclosure proceedings[.]" **Cunningham v. McWilliams**, 714 A.2d 1054, 1056 (Pa. Super. 1998). The entry of judgment in an action for mortgage foreclosure is proper "if the mortgagors

admit that the mortgage is in default . . . and that the recorded mortgage is in the specified amount." *Id.* at 1057.

Appellant does not contest that Mount Laurel has failed to make payments on the Promissory Note when due and is in default on its indebtedness to Appellees. Nonetheless, Appellant argues the entry of the foreclosure order was improper because (i) Appellee's failed to prove the existence of a surety agreement between Appellant and Mount Laurel, and (ii) absent proof of such a surety agreement, the Mortgage Agreement cannot be enforced. We reject Appellant's arguments.

Appellant challenges the factual finding of the trial court, arguing the evidence adduced at trial shows Appellant did not really intend to enter into a binding mortgage agreement. According to Appellant's version of the facts, Appellant only intended to offer the 95-acre property as collateral "if needed" and that the parties agreed the additional collateral was "not needed." Appellant's Brief at 21.

Our standard of review in non-jury cases is limited to a determination of whether competent evidence supports the findings of the trial court and whether the trial court erred in applying the law. *Company Image Knitware, Ltd. v. Mothers Work, Inc.*, 909 A.2d 324, 330 (Pa. Super. 2006). We consider the evidence in a light most favorable to the verdict winner and will reverse the trial court only if its findings of fact lack the support of competent evidence or its findings are premised on an error of

law. ***Allegheny County Housing Authority v. Johnson***, 908 A.2d 336, 340 (Pa. Super. 2006). "In a written contract the intent of the parties is the writing itself and when the words are clear and unambiguous the intent is to be determined only from the express language of the agreement." ***Robert F. Felte, Inc. v. White***, 302 A.2d 347, 351 (Pa. 1973).

In the instant case, the plain language of the Mortgage Agreement, reproduced ***supra***, clearly and unambiguously created a mortgage securing Mount Laurel's indebtedness to Appellee. In addition, the plain language of the Mortgage Agreement clearly and unambiguously demonstrates that the mortgage is now in default due to Mount Laurel's failure to make payments to Appellee. There is nothing in the language of the Mortgage Agreement that suggests it was a conditional agreement or that the parties otherwise intended for it to only be legally binding "if needed." Therefore, pursuant to ***Robert F. Felte, Inc.***, we need look no further than the Mortgage Agreement to conclude that the trial court's finding that Appellant intended to grant a mortgage on the 95-acre property is supported by the evidence and the applicable law.

However, even if there were some ambiguity (which there is not), Appellant would still not be entitled to relief. Looking outside of the language of the Mortgage Agreement, the trial court concluded that:

> It is clear, beginning with the loan commitment letter and the testimony of the parties that the intent of the parties was to have [Appellant's 95-acre property] used as collateral for the

loan in question. The promissory note and mortgage are in default.

Trial Ct. Op., filed 11/19/14, at 9-10.

After a careful review of the record, we find ample competent evidence to support the trial court's finding that Appellant signed the Mortgage Agreement intending to use the 95-acre property as collateral to secure Appellee's loan to Mount Laurel. This includes the commitment letter and testimony cited by the trial court, as well as the corporate resolutions discussed **supra**. To the extent that Appellant's witnesses testified that Appellant did not truly intend to be bound by the Mortgage Agreement, the trial court as fact finder was free to find that this testimony was not credible. This Court will not second-guess those credibility determinations.[2] Therefore, Appellant is not entitled to relief on his claim that the findings of the trial court are not supported by competent evidence.

Finally, Appellant avers that the trial court's findings are premised on errors in the application of the law. It argues that the Mortgage Agreement, without a written and signed surety agreement between Appellant and Mount Laurel, violates the Statute of Frauds and is therefore unenforceable

---

[2] "It is well established that the credibility of witnesses is an issue to be determined by the trier of fact. On appeal this Court will not revisit the trial court's determinations . . . regarding the credibility of the parties. Thus, this argument, which would require this Court to revisit and essentially reverse the [trial court] on his credibility determinations, provides no grounds for relief." **Woods v. Cicierski**, 937 A.2d 1103, 1105 (Pa. Super. 2007) (internal citations omitted).

- 10 -

as a matter of law. This argument is without support in law and is, in any event, waived.

Mortgages are subject to the Statute of Frauds as they represent interests in real property. ***Eastgate Enterprises, Inc. v. Bank and Trust Co. of Old York Road***, 345 A.2d 279, 281 (Pa. Super. 1975). The Statute of Frauds as applied to mortgages requires only that, "[t]o be valid, a **mortgage** must be in writing." ***Id.*** (emphasis added). Surety agreements promising to pay the debts of another may also be subject to the Statute of Frauds in this Commonwealth. ***Berks Products Corporation v. Arch Insurance Company***, 72 A.3d 315, 321 (Pa. Cmwlth 2013). However, there is nothing in the Statute of Frauds requiring that, in order for a mortgage to be valid, any surety agreements that may have motivated the granting of the mortgage must also be in writing.[3]

Appellant fails to cite to any controlling authority to support its claim that a mortgage cannot be valid absent a written surety agreement. Accordingly, we find Appellant waived his argument that the trial court erred in the application of law. ***See*** Pa.R.A.P. 2119(a); ***In re Estate of Whitley***, 50 A.3d 203, 209-10 (Pa. Super. 2012) ("Failure to cite relevant legal authority constitutes waiver of the claim on appeal.").

---

[3] Whether or not a written or oral surety agreement exists between Appellant and Mount Laurel, Appellee is not seeking to enforce a surety agreement. Appellee seeks only to enforce the terms of the signed, written Mortgage Agreement between itself and Appellant.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/2016